In the Matter of the Petition of LAURA TARSIA INCURIA, Petitioner, against RICHARD TARSIA INCURIA, Respondent.

Domestic Relations Courts of the City of New York, Family Court, Borough of Manhattan, June 8, 1935.

*Paul Windels* [*Ida Cassasa, Assistant Corporation Counsel*, of counsel], for the petitioner.

*Francis Martocci*, for the respondent.

PANKEN, J. The facts, in so far as they are germane for a determination of the rights of the parties before me in this proceeding, are as follows:

The petitioner and the respondent were married to each other in the city of Taranto, Italy, on or about the 13th day of November, 1927. At the time of the marriage the petitioner, the wife, was about forty-seven years of age; the respondent, the husband, about eighteen years of age. There are no children.

The petitioner, at the time the marriage contract was entered into, was on a visit to Italy. The respondent was a resident and a citizen of the Kingdom of Italy.

The respondent is the nephew of the petitioner. What actuated these people to enter into the marriage contract has not been testified to or fully brought to my attention. The proof and the inference is that the marriage was not the result of an infatuation, nor the consequence of love. There was probably affection between the parties that would naturally flow from the relationship existing between them. An adult aunt of forty-seven would undoubtedly have an affection for a young, handsome nephew, and, in turn, a nephew would have affection for a visiting aunt who came all the way across the Atlantic ocean to her homeland and relatives.

Soon after the marriage was contracted, the couple repaired to the United States, and the aunt, being a citizen of our country, made easy the entry of her nephew-husband into the land. That may have been the inducing reason or cause why the young man, in the first instance, married his aunt and the reason why the consent of the boy's family to the marriage was obtained.

In the proceeding before me the petitioner asks that this court make an order requiring her husband to contribute to her support and maintenance. The question before me is, is the petitioner entitled to support from her husband.

The right of the petitioner to be supported is questioned by the respondent by an attack upon the validity of the marriage. When the marriage relationship is in question it becomes incumbent upon the petitioner to establish her right for support from the respondent; that requires of her to establish the marriage relationship. While there may be a presumption that the marriage existing is valid, when its validity is questioned the burden of establishing the validity of the contract rests upon the petitioner. It has been said in the case of *Earle* v. *Earle* (126 N. Y. Supp. 317) that the marriage, being " odious by common consent of nations," is not protected by the rules of international law. A marriage of the character herein involved is condemned by common consent of civilized nations. That raises the question as to whether the nephew is her husband. It raises the question as to the validity of the marriage.

The age disparity does not militate against the petitioner; in fact, at this proceeding, it would help her. The petitioner is now over fifty-four years of age. She is no longer possessed with the youth and plasticity which would enable her to earn a living as she had when she was a younger person. The respondent is now only twenty-six years of age. He is young, strong, plastic and more able to earn a living than his aunt is. If the marriage were valid, the responsibility for the maintenance and support of the petitioner would rest upon the shoulders of the respondent.

Under our law, a marriage between aunt and nephew is within the prohibited degree. Such a marriage is incestuous. It is thus legislated by statute. Section 5 of the Domestic Relations Law reads as follows: "Incestuous and void marriages: A marriage is incestuous and void whether the relatives are legitimate or illegitimate between either:" * * * 3: "An uncle and niece or an aunt and a nephew." Thus, by the law of our State, the marriage between the parties before me is prohibited, is void, and moreover, is criminal. Incestuous marriages are crimes.

From a very early period in the history of man, marriages in such close degrees of relationship were prohibited. The Bible interdicts such marriages. It specifically prohibits marriage between nephew and aunt.

Chapter 18 (verse 12) of Leviticus says: "Thou shalt not uncover the nakedness of thy father's sister: she is thy father's near kinswoman." And again in the same chapter (verse 13) this language appears: "Thou shalt not uncover the nakedness of thy mother's sister: for she is thy mother's near kinswoman." Chapter 20 (verse 19) of Leviticus reads as follows: "And thou shalt not uncover the nakedness of thy mother's sister, nor of thy father's sister: for he uncovereth his near kin: they shall bear their iniquity." The basis of the statute, as it appears in the Domestic Relations Law of our State, is found in the Bible, in usage, as well as I might say, in science. The experience of mankind has taught that eugenically, marriages in such close relationships as first cousins, aunts and nephews, uncles and nieces, etc., result in the inbreeding of the vicious propensities that may, and are likely to be in any family group. The crossing of strains is very helpful and of desirable consequence. Marriage in close degrees is repugnant to decency. It has come to be regarded as unnatural. As man rises in civilization and in culture, he discards brute and primitive characteristics and habits to the extent that they appear to him, not only to be repellant, but unnatural.

Under the law of the land, and usage, a marriage between aunt and nephew if permitted is deemed unnatural. I know of no jurisdiction within the United States which permits the marriage contract between an aunt and nephew. I believe there is one State in the Union, where the marital contract between uncle and niece is permitted. The reason is not given. Excepting inferentially, it is permitted because there is no direct prohibition to such a marriage in the Bible. In our own State, and in most of the States of the Union, a marriage between first cousins or between uncle and niece is in the prohibitive degree.

In *Audley* v. *Audley* (196 App. Div. 103) the court said through Judge LAUGHLIN, in speaking of the provision of law prohibiting marriages in the prohibited degree: " The prohibition was enacted for the benefit of the public health and the perpetuation of the human race. Since the closest relationship of an uncle and niece under a lawful marriage is that of the whole blood to the half blood, and marriages of those so related are plainly prohibited, I think it would be unreasonable to impute to the Legislature the belief that the evils which it was anticipated would flow from such marriages would not befall the issue of a marriage between an uncle of the half blood and a niece of the quarter blood of the common ancestor. The marriage having been prohibited by law and declared to be void by said section 5 of the statute, it is as if no marriage had taken place between the parties."

Since the marriage of the parties before me was not consummated in any of the States in the Union, the question arises whether or not the marriage, were it legal in the Kingdom of Italy, should be recognized by us in this jurisdiction.

In the case of *Van Voorhis* v. *Brintnall* (86 N. Y. 18, 26), Judge DANFORTH says: " Indeed the general doctrine is so well settled by the decisions of all courts and the reiteration of text writers as to become a maxim in the law, that one rule in these cases should be followed by all countries; that is, the law of the country where the contract is made." But immediately thereafter the learned justice said: " There are no doubt exceptions to this rule; cases, *first* of incest or polygamy coming within the prohibitions of natural law; * * * *second,* of prohibition by positive law." In the same case it is said: " And coming to the case in hand, [talking of the case before the court at that time] the rule recognizes as valid a marriage considered valid in the place where celebrated."

It would appear from the reading of the decision in the case of *Van Voorhis* v. *Brintnall* (*supra*) that the rights of parties under a marriage contract would be determined according to the law of the land where the marriage contract was consummated, so that, if a marriage contract were valid in a foreign State, credence would have to be accorded by our State to that contract. The marriage contract would be considered valid even though, under our law, such a contract would be invalid.

The general rule thus is that the validity of a marriage contract is determined by the law of the place where it was contracted; if valid there, it will be held valid in our State. If invalid by the *lex loci contractus*, its invalidity will follow it into our jurisdiction. But there are exceptions, and these exceptions were stated by Judge DANFORTH, where the marriage is incestuous, polygamous or is

prohibited by positive law. (See, also, *Johnson* v. *Johnson*, 57 Wash. 89; 106 P. 500; *Sturgis* v. *Sturgis*, 51 Ore. 10; 93 P. 696.) If a citizen of a foreign State, in which State polygamy is legal, would bring his half dozen or so legal wives to our country, the marriage of the six spouses to the one spouse would not be considered legal or valid by us. The reason for that is that there is a positive law against polygamy. Equally so, there is a positive law against marriage between nephew and aunt. Is the latter less positive than the former? Is the latter more to be condemned than the former? Either is as bad as the other.

An exception to the general rule is ordinarily made where the marriage is repugnant to the public policy of the domicile of the parties. (38 C. J. 1277.) That will be held in respect to a polygamous marriage or an incestuous marriage. Corpus Juris (Vol. 38, p. 1276, § 3) says: " An exception to the general rule, however, is ordinarily made in the case of marriages repugnant to the public policy of the domicile of the parties, in respect of polygamy, incest, or miscegenation, or otherwise contrary to its positive laws."

Since the marriage between the parties brought before me is void as a matter of law, under the Domestic Relations Law of our State, no valid marriage existed between the parties. The question then arose as to whether or not the marriage was valid under the law of the Kingdom of Italy and if it was, is this marriage such a one as is by consent of the civilized nations invalid.

The testimony of the petitioner was to the effect that the marriage was entered into and contract consummated in the Kingdom of Italy. Article 59 of the Civil Code of the Italian Statutes reads as follows: " In the Collateral line marriage is prohibited between: (1) brothers and sisters, legitimate or natural; (2) cousins of the same degree; (3) between an uncle and a niece, an aunt and a nephew."

It would appear that not only is this marriage void under the law of the State of New York, but it is also void under the laws of the Kingdom of Italy. There is, however, an exception to section 68 of the Civil Code of Italian Statutes; it reads as follows: " The King, when there are exceptional reasons, may waive the provisions contained in sub-divisions 2 and 3 of Article 59."

There is no testimony before me that the King waived the provisions of article 59. If there were proof that the King had waived that which nature demands and which decency compels, and which the experience of science for the welfare of mankind imposes, this court would not recognize the waiver of the King. By such waiver, it would transplant into our own land a condition which would do violence to our sense of decency and to the safe-guarding of the

public health. Section 564 of the Italian Statutes reads: " Incest — Whoever, in a manner creating a public scandal, commits incest with a descendant or an ascendant, or with a cousin in the direct line, or with a sister or a brother, shall be punished by imprisonment from one to five years.

" The punishment in case of an incestuous relationship shall be imprisonment for from two to eight years. In cases covered by the preceding provisions, if the incest is committed by a person of full age with a minor, under the age of 18, the penalty shall be increased for the older person."

Thus, it appears that the marriage between relatives of so close a degree as the parties before me are, is, under the law of the State and the Kingdom of Italy, a crime. That, despite section 68, above cited.

There is also the question before me as to whether the Domestic Relations Court of the City of New York has jurisdiction of the matter herein. On the surface, it would appear that this court by its decision determines whether a valid marriage relationship exists between the parties. It is within the province of this court to determine whether or not an alleged dependent is entitled to support and maintenance. To solve that question, it becomes necessary for the court to inquire as to whether or not a legal obligation rests upon the respondent. To determine that, it follows necessarily that the court must decide whether or not there is a valid marriage. I conclude that the marriage between the parties herein is void both under the law of the State and the law of Italy, and the petition is dismissed.