In the Matter of the Estate of FANNIE MAY, Deceased. ALICE M. GREENBERG et al., Appellants; SAM MAY et al., Respondents.

Argued April 20, 1953; decided July 14, 1953.

*Helen M. Clark* for appellants. I. Petitioner-appellant is entitled to letters of administration by virtue of section 118 of the Surrogate's Court Act. (*Audley* v. *Audley,* 196 App. Div. 103; *Matter of Dobess Realty Corp.* v. *Magid,* 186 Misc. 225; *People ex rel. Knott Management Corp.* v. *Graves,* 286 N. Y. 377; " *Smith* " v. " *Smith* ", 179 Misc. 19; *Matter of Incuria* v. *Incuria,* 155 Misc. 755; *People ex rel. Bd. of Supervisors of Rockland Co.* v. *Travis,* 184 App. Div. 730; *People ex rel. Jackson* v. *Potter,* 47 N. Y. 375; *Van Voorhis* v. *Brintnall,* 86 N. Y. 18; *Cunningham* v. *Cunningham,* 206 N. Y. 341; *Cruickshank* v. *Cruickshank,* 193 Misc. 367.) II. It was an abuse of discretion for the Appellate Division to award costs to objectant as against respondent personally. (*Matter of Page,* 107 N. Y. 266; *Matter*

of Shapiro [Cohn], 147 Misc. 526; *Matter of Reimers,* 261 N. Y. 337; *Matter of Boyer,* 54 Misc. 182; *Matter of Ordway,* 196 N. Y. 95; *Texido* v. *Merical,* 132 Misc. 764; *Perrin* v. *Harrington,* 146 App. Div. 292; *Day* v. *Town of New Lots,* 107 N. Y. 148.)

*Morton L. Kimmelman* and *Matthew H. Bowcock* for respondents. I. A marriage valid where contracted is valid in this jurisdiction. (*Van Voorhis* v. *Brintnall,* 86 N. Y. 18; *Thorp* v. *Thorp,* 90 N. Y. 602; *Cunningham* v. *Cunningham,* 206 N. Y. 341; *Weisberg* v. *Weisberg,* 112 App. Div. 231; *Stevenson* v. *Gray,* 56 Ky. 193; *Fersterwald* v. *Burk,* 129 Md. 131; *Burnside* v. *Whitney,* 21 N. Y. 148; *Matter of Carnegie Trust Co.,* 151 App. Div. 606, 206 N. Y. 390; *People* v. *Bord,* 243 N. Y. 595; *Earle* v. *Earle,* 141 App. Div. 611.) II. Sound public policy requires recognition of this marriage. (*Cunningham* v. *Cunningham,* 206 N. Y. 341.)

LEWIS, Ch. J. In this proceeding, involving the administration of the estate of Fannie May, deceased, we are to determine whether the marriage in 1913 between the respondent Sam May and the decedent, who was his niece by the half blood — which marriage was celebrated in Rhode Island, where concededly such marriage is valid — is to be given legal effect in New York where statute law declares incestuous and void a marriage between uncle and niece. (Domestic Relations Law, § 5, subd. 3.)

The question thus presented arises from proof of the following facts: The petitioner Alice May Greenberg, one of six children born of the Rhode Island marriage of Sam and Fannie May, petitioned in 1951 for letters of administration of the estate of her mother Fannie May, who had died in 1945. Thereupon, the respondent Sam May, who asserts the validity of his marriage to the decedent, filed an objection to the issuance to petitioner of such letters of administration upon the ground that he is the surviving husband of the decedent and accordingly, under section 118 of the Surrogate's Court Act, he has the paramount right to administer her estate. Contemporaneously with, and in support of the objection filed by Sam May, his daughter Sirel Lenrow and his sons Harry May and Morris B. May — who are children of the challenged marriage — filed objections to the issuance of

letters of administration to their sister, the petitioner, and by such objections consented that letters of administration be issued to their father Sam May.

The petitioner, supported by her sisters Ruth Weisbrout and Evelyn May, contended throughout this proceeding that her father is not the surviving spouse of her mother because, although their marriage was valid in Rhode Island, the marriage never had validity in New York where they were then resident and where they retained their residence until the decedent's death.

The record shows that for a period of more than five years prior to his marriage to decedent the respondent Sam May had resided in Portage, Wisconsin; that he came to New York in December, 1912, and within a month thereafter he and the decedent — both of whom were adherents of the Jewish faith — went to Providence, Rhode Island, where, on January 21, 1913, they entered into a ceremonial marriage performed by and at the home of a Jewish rabbi. The certificate issued upon that marriage gave the age of each party as twenty-six years and the residence of each as " New York, N. Y.". Two weeks after their marriage in Rhode Island the respondent May and the decedent returned to Ulster County, New York, where they lived as man and wife for thirty-two years until the decedent's death in 1945. Meantime the six children were born who are parties to this proceeding.

A further significant item of proof — to which more particular reference will be made — was the fact that in Rhode Island on January 21, 1913, the date of the marriage here involved, there were effective statutes which prohibited the marriage of an uncle and a niece, *excluding,* however, those instances — of which the present case is one — where the marriage solemnized is between persons of the Jewish faith within the degrees of affinity and consanguinity allowed by their religion.

In Surrogate's Court, where letters of administration were granted to the petitioner, the Surrogate ruled that although the marriage of Sam May and the decedent in Rhode Island in 1913 was valid in that State, such marriage was not only void in New York as opposed to natural law but is contrary to the provisions of subdivision 3 of section 5 of the Domestic Relations

Law. Accordingly the Surrogate concluded that Sam May did not qualify in this jurisdiction for letters of administration as the surviving spouse of the decedent.

At the Appellate Division the order of the Surrogate was reversed on the law and the proceeding was remitted to Surrogate's Court with direction that letters of administration upon decedent's estate be granted to Sam May who was held to be the surviving spouse of the decedent. In reaching that decision the Appellate Division concluded that the 1913 marriage of Sam May and the decedent in Rhode Island, being concededly valid in that State, is valid in New York where the degree of consanguinity of uncle and niece is not so close as to be repugnant to our concept of natural law, and that the statute (Domestic Relations Law, § 5, subd. 3) — which declares such a marriage to be incestuous and void — lacks express language which gives it extraterritorial force. The case comes to us upon appeal as of right by the petitioner and her two sisters Ruth Weisbrout and Evelyn May.

We regard the law as settled that, subject to two exceptions presently to be considered, and in the absence of a statute expressly regulating within the domiciliary State marriages solemnized abroad, the legality of a marriage between persons *sui juris* is to be determined by the law of the place where it is celebrated. (*Van Voorhis* v. *Brintnall,* 86 N. Y. 18, 24; *Thorp* v. *Thorp,* 90 N. Y. 602, 605–606; *Moore* v. *Hegeman,* 92 N. Y. 521, 524; *Medway* v. *Needham,* 16 Mass. 157, 159–160; *Fensterwald* v. *Burk,* 129 Md. 131; Restatement, Conflict of Laws, §§ 121, 131, 132; Story on Conflict of Laws [7th ed.], § 113; 2 Beale, Conflict of Laws, pp. 669–670; 1 Bishop on Marriage, Divorce and Separation, § 856.)

In *Van Voorhis* v. *Brintnall* (*supra*) the decision turned upon the civil status in this State of a divorced husband and his second wife whom he had married in Connecticut to evade the prohibition of a judgment of divorce which, pursuant to New York law then prevailing, forbade his remarriage until the death of his former wife. In reaching its decision, which held valid the Connecticut marriage there involved, this court noted the fact that in the much earlier case of *Decouche* v. *Savetier* (3 Johns. Ch. 190, 211 [1817]), Chancellor KENT had recognized the gen-

eral principle " * * * that the rights dependent upon nuptial contracts, are to be determined by the *lex loci*." Incidental to the decision in *Van Voorhis* v. *Brintnall* (*supra*) which followed the general rule that " * * * recognizes as valid a marriage considered valid in the place where celebrated " (*id.*, p. 25), this court gave careful consideration to, and held against the application of two exceptions to that rule — viz., cases within the prohibition of positive law; and cases involving polygamy or incest in a degree regarded generally as within the prohibition of natural law.

We think the Appellate Division in the case at bar rightly held that the principle of law which ruled *Van Voorhis* v. *Brintnall* and kindred cases cited (*supra*) was decisive of the present case and that neither of the two exceptions to that general rule is here applicable.

The statute of New York upon which the appellants rely is subdivision 3 of section 5 of the Domestic Relations Law which, insofar as relevant to our problem, provides:

" § 5. *Incestuous and void marriages.*

" A marriage is incestuous and void whether the relatives are legitimate or illegitimate between either:

" 1. * * *

" 2. * * *

" 3. An uncle and niece or an aunt and nephew.

" If a marriage prohibited by the foregoing provisions of this section be solemnized it shall be void, and the parties thereto shall each be fined not less than fifty nor more than one hundred dollars and may, in the discretion of the court in addition to said fine, be imprisoned for a term not exceeding six months. Any person who shall knowingly and wilfully solemnize such marriage, or procure or aid in the solemnization of the same, shall be deemed guilty of a misdemeanor and shall be fined or imprisoned in like manner."

Although the New York statute quoted above declares to be incestuous and void a marriage between an uncle and a niece and imposes penal measures upon the parties thereto, it is important to note that the statute does not by express terms regulate a marriage solemnized in another State where, as in our present case, the marriage was concededly legal. In the case at hand, as we

have seen, the parties to the challenged marriage were adherents of the Jewish faith which, according to Biblical law and Jewish tradition — made the subject of proof in this case — permits a marriage between an uncle and a niece; they were married by a Jewish rabbi in the State of Rhode Island where, on the date of such marriage in 1913 and ever since, a statute forbidding the marriage of an uncle and a niece was expressly qualified by the following statutory exceptions appearing in 1913 in Rhode Island General Laws (tit. XXIV, ch. 243, §§ 4, 9; now tit. XXXVI, ch. 415, §§ 4, 9):

"§ 4. The provisions of the preceding sections shall not extend to, or in any way affect, any marriage which shall be solemnized among the Jews, within the degrees of affinity or consanguinity allowed by their religion."

"§ 9. Any marriage which may be had and solemnized among the people called Quakers, or Friends, in the manner and form used or practised in their societies, or among persons professing the Jewish religion, according to their rites and ceremonies, shall be good and valid in law; and wherever the words ' minister ' and ' elder ' are used in this chapter, they shall be held to include all of the persons connected with the society of Friends, or Quakers, and with the Jewish religion, who perform or have charge of the marriage ceremony according to their rites and ceremonies."

As section 5 of the New York Domestic Relations Law (quoted, *supra*) does not expressly declare void a marriage of its domiciliaries solemnized in a foreign State where such marriage is valid, the statute's scope should not be extended by judicial construction. (*Van Voorhis* v. *Brintnall, supra,* p. 33.) Indeed, had the Legislature been so disposed it could have declared by appropriate enactment that marriages contracted in another State — which if entered into here would be void — shall have no force in this State. (*Putnam* v. *Putnam,* 25 Mass. 433, 435.) Although examples of such legislation are not wanting *, we find none in New York which serve to give subdivision 3 of section 5 of the Domestic Relations Law extraterritorial effectiveness. (*Van Voorhis* v. *Brintnall, supra,* pp. 25–37.) Accordingly, as to

---

* See 2 Beale, Conflict of Laws, § 129.6, p. 681, and statutes there collated.

the first exception to the general rule that a marriage valid where performed is valid everywhere, we conclude that, absent any New York statute expressing clearly the Legislature's intent to regulate within this State marriages of its domiciliaries solemnized abroad, there is no " positive law " in this jurisdiction which serves to interdict the 1913 marriage in Rhode Island of the respondent Sam May and the decedent.

As to the application of the second exception to the marriage here involved — between persons of the Jewish faith whose kinship was not in the direct ascending or descending line of consanguinity and who were not brother and sister — we conclude that such marriage, solemnized, as it was, in accord with the ritual of the Jewish faith in a State whose legislative body has declared such a marriage to be " good and valid in law ", was not offensive to the public sense of morality to a degree regarded generally with abhorrence and thus was not within the inhibitions of natural law.

A remaining point relates to an assertion by the petitioner-appellant that it was an abuse of discretion for the Appellate Division to have awarded costs against her personally. The award of costs in the Appellate Division was a matter of statutory discretion (Surrogate's Ct. Act, § 283, subd. 2) with which we will not interfere.

The decree of the Surrogate's Court should be affirmed, with one bill of costs to respondents, payable out of the estate.

Desmond, J. (dissenting). It is fundamental that every State has the right to determine the marital status of its own citizens (*Maynard* v. *Hill,* 125 U. S. 190; *Hunt* v. *Hunt,* 131 U. S., Appendix, clxv; *Kinnier* v. *Kinnier,* 45 N. Y. 535, 544; *Wade* v. *Kalbfleisch,* 58 N. Y. 282; *Cunningham* v. *Cunningham,* 206 N. Y. 341, 347; *Bell* v. *Little,* 204 App. Div. 235, 237, affd. 237 N. Y. 519). Exercising that right, New York has declared in section 5 of the Domestic Relations Law that a marriage between uncle and niece is incestuous, void and criminal. Such marriages, while not within the Levitical forbidden degrees of the Old Testament, have been condemned by public opinion for centuries (see 1 Bishop on Marriage, Divorce and Separation, § 738), and are void, by statute in (it would seem) forty-seven of the States of

the Union (all except Georgia, see Martindale-Hubbel, Law Digests, and except, also, that Rhode Island, one of the forty-seven, exempts from its local statute '' any marriage which shall be solemnized among the Jews, within the degrees of affinity or consanguinity allowed by their religion '', Gen. L. of R. I., ch. 415, § 4). It is undisputed here that this uncle and niece were both domiciled in New York in 1913, when they left New York for the sole purpose of going to Rhode Island to be married there, and that they were married in that State conformably to its laws (see above) and immediately returned to New York and ever afterwards resided in this State. That Rhode Island marriage, between two New York residents, was, in New York, absolutely void for any and all purposes, by positive New York law which declares a strong public policy of this State (see Penal Law, § 1110).

The general rule that '' a marriage valid where solemnized is valid everywhere '' (see Restatement, Conflict of Laws, § 121) does not apply. To that rule there is a proviso or exception, recognized, it would seem, by all the States, as follows: '' unless contrary to the prohibitions of natural law or the express prohibitions of a statute '' (see *Thorp* v. *Thorp,* 90 N. Y. 602, 605). Section 132 of the Restatement of Conflict of Laws states the rule apparently followed throughout America: '' A marriage which is against the law of the state of domicil of either party, though the requirements of the law of the state of celebration have been complied with, will be invalid everywhere in the following cases: * * * (b) incestuous marriage between persons so closely related that their marriage is contrary to a strong public policy of the domicil '' (see 35 Am. Jur., Marriage, § 180; 55 C. J. S., Marriage, § 16; Grosman, New York Law of Domestic Relations, § 34). The old and famous New York case of *Wightman* v. *Wightman* (4 Johns. Ch. 343, 349, 350), decided in 1820 when there were no marriage statutes in our State, says that marriages may be declared by '' appropriate legislation '', to be incestuous. New York, as a sovereign State with absolute powers over the marital status of its citizens, has enacted such legislation, but we, by this decision, are denying it efficacy.

*Van Voorhis* v. *Brintnall* (86 N. Y. 18) does not save this marriage. That case dealt not with a marriage void under sec-

tion 5 of the Domestic Relations Law, but one forbidden by section 8 thereof. Section 8 forbids the guilty party, in a New York divorce judgment, to marry again within a certain time, and the *Van Voorhis* ruling was that, by section 8, the Legislature did not intend to make such marriages contracted outside this State absolutely void, but merely stated an in personam prohibition against the adjudged adulterer marrying, for a period of time (see analysis of *Van Voorhis* v. *Brintnall* in *Mitchell* v. *Mitchell*, 63 Misc. 580, 586). This court's opinion in the *Van Voorhis* case, while stating the general rule that the validity of a marriage depends on the law of the place of marriage, noted that there are exceptions thereto in cases of incest, within the prohibition of natural law, and " prohibition by positive law " (86 N. Y., at p. 26). Section 5 of the Domestic Relations Law, the one we are concerned with here, lists the marriages which are " incestuous and void " in New York, as being those between parent and child, brother and sister, uncle and niece, and aunt and nephew. All such misalliances are incestuous, and all, equally, are void. The policy, language, meaning and validity of the statute are beyond dispute. It should be enforced by the courts.

The order should be reversed and the proceeding remitted to the Surrogate for appropriate proceedings, with costs to abide the event.

CONWAY, DYE, FULD and FROESSEL, JJ., concur with LEWIS, Ch. J.; DESMOND, J., dissents in opinion; VAN VOORHIS, J., taking no part.

Decree affirmed.