OPINION OF THE COURT
Thomas J. McNamara, J.
In September 2004, an employee of the State of New York and a member of the Retirement System wrote to the Comptroller to inquire whether his contemplated marriage in Canada to his same-sex partner would be legally recognized by the Retirement System and how his retirement benefits would be impacted as a result of the marriage. A response was provided on behalf of the Comptroller in October 2004. The employee/ member was advised that given that the employee/member and his same-sex partner could legally marry in certain provinces of Canada, the Retirement System would, based on the principle of comity, recognize a same-sex Canadian marriage in the same manner as an opposite-sex New York marriage.[1]
In August 2006, the Alliance Defense Fund, an organization located in Scottsdale, Arizona, sent a letter to the Retirement System inquiring as to whether the Comptroller intended to continue the policy regarding the recognition of same-sex Canadian marriage in light of the Court of Appeals decision in Hernandez v Robles (7 NY3d 338 [2006]) and the Appellate Division, Second Department, ruling in Langan v St. Vincent’s Hosp. of N.Y. (25 AD3d 90 [2005]). The Retirement System indicated in its response that absent further legislative action or controlling judicial opinion to the contrary, the Comptroller intended to continue to recognize a same-sex Canadian marriage in the same manner as an opposite-sex New York marriage.
Plaintiffs, citizen taxpayers of New York State, then instituted this proceeding pursuant to State Finance Law § 123-b challenging the determination on the basis that implementation of the policy would result in the illegal expenditure of state funds. *251 After plaintiffs brought on an application to preliminarily enjoin the Comptroller from recognizing foreign same-sex marriages, defendant moved to dismiss the action on the ground that plaintiffs lack standing to raise the issue. Peri Rainbow and Tamela Sloan then moved for leave to intervene.
The applications for a preliminary injunction and to dismiss were denied and Rainbow and Sloan were granted leave to intervene (Godfrey v Hevesi, Sup Ct, Albany County, Mar. 2007, McNamara, J., index No. 5896-06).
Plaintiffs contend that the decision of the Comptroller to recognize a same-sex Canadian marriage in the same manner as an opposite-sex New York marriage is without legal authority and, therefore, is illegal, ultra vires, against public policy and otherwise contrary to law. According to plaintiffs, the principle of comity, relied on by the Comptroller in making his determination, does not provide authority for the recognition of same-sex foreign marriages.
Under Retirement and Social Security Law § 74 (b) and § 374 (b), the New York State Comptroller is vested with the “exclusive authority to determine” the proper award of benefits and beneficiaries.
Marriage, so far as its validity in law is concerned, is a civil contract (Domestic Relations Law § 10). New York has long chosen, as a matter of comity, to recognize, with two exceptions, a marriage considered valid in the place where it was celebrated, even if it could not have been lawfully entered in this state (Matter of May, 305 NY 486, 490-491 [1953]). The exceptions apply in those instances where the Legislature has enacted a positive prohibition against the particular kind of marriage, even when entered into outside New York, and marriages involving polygamy or incest {id. at 491).
The Comptroller’s decision to recognize same-sex Canadian marriages is based on the determination that such marriages are legal in that jurisdiction and would not otherwise be inconsistent with New York law. New York, unlike the majority of states, has not enacted a “defense-of-marriage” act so as to expressly prohibit recognition of same-sex marriages. Moreover, the question posed to the Comptroller, and the policy determination that resulted, do not concern marriages involving polygamy or incest. Consequently, the determination by the Comptroller to recognize same-sex marriages performed in Canada, in accordance with the laws of that jurisdiction, is consistent with New York law regarding the recognition of marriages performed elsewhere.
*252 Neither the decision of the Court of Appeals in Hernandez nor the decision of the Appellate Division in Langan compel a different result here. In Hernandez, the Court found that New York’s statutory law limits marriage to opposite-sex couples and that the limitation is consistent with the New York Constitution. As such, the determination in Hernandez did not answer the question raised here. Rather, the question of whether same-sex marriages valid in the jurisdiction where performed should be recognized in New York is an outgrowth of the determination that the law in New York does not compel the State to sanction same-sex marriages.
In Langan, the Appellate Division confronted the question of whether an individual had standing to recover damages for the wrongful death of his same-sex partner. The couple had entered into a civil union in Vermont. The Court found that the relationship did not confer the status of a “surviving spouse” so as to give rise to rights under the wrongful death statute (EPTL 5-4.1). Again, the issue of recognition of a foreign same-sex marriage was not raised or addressed.
Accordingly, defendants are granted judgment declaring that the policy of the Comptroller to recognize same-sex Canadian marriages in the same manner as opposite-sex New York marriages, as set forth in the letters dated October 8, 2004 and August 8, 2006, is legal and not contrary to law.
All papers including this judgment are returned to defendants’ attorneys. The signing of this judgment shall not constitute entry or filing under CPLR 2220. Counsel is not relieved from the applicable provisions of this rule with regard to filing, entry and notice of entry.

. Most retirement benefits are not affected by the marital status of the Retirement System member. However, some retirement benefits are payable to a “surviving spouse” or to a “widow/widower.” Those benefits include a cost-of-living adjustment payable to a surviving spouse after the death of the member where the selected retirement option provides that benefits be continued for the life of the surviving spouse (Retirement and Social Security Law §§ 78-a [Employees’ Retirement System members], 378-a [Policemen’s and Firemen’s Retirement System members]). The other benefit is an accidental death benefit which is payable in certain circumstances to certain survivors including the member’s widow or widower (Retirement and Social Security Law §§ 61 [tiers 1, 2], 509 [tier 3], 607 [tier 4]).