[872 NYS2d 578]

Kenneth J. Lewis et al., Appellants, v New York State Department of Civil Service et al., Respondents.

Third Department, January 22, 2009

**APPEARANCES OF COUNSEL**

*Brian W. Raum*, Scottsdale, Arizona, and *Cutler, Trainor & Cutler, L.L.P.*, Malta (*James P. Trainor* of counsel), for appellants.

*Andrew M. Cuomo, Attorney General*, Albany (*Sasha Samberg-Champion* of counsel), for New York State Department of Civil Service and another, respondents.

*Susan L. Sommer, Lambda Legal Defense and Education Fund, Inc.*, New York City, and *Kramer, Levin, Naftalis & Frankel, L.L.P.*, New York City (*Jeffrey S. Trachtman* of counsel), for Peri Rainbow and another, respondents.

*Frederick C. Veit, National Legal Foundation*, Briarcliff Manor, for National Legal Foundation, amicus curiae.

*Vincent P. McCarthy, American Center for Law and Justice, N.E.*, Litchfield, Connecticut, and *Kriss, Kriss & Brignola, L.L.P.*, Albany (*Charles Kriss* of counsel), *American Center for Law and Justice, N.E.*, and *Benjamin P. Sisney, American Center for Law and Justice*, Virginia Beach, Virginia, for American Center for Law and Justice, N.E., amicus curiae.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Susan Paulson* of counsel), for City of New York, amicus curiae.

*Matthew Faiella, New York Civil Liberties Union Foundation*, New York City, for New York Civil Liberties Union Foundation, amicus curiae.

**OPINION OF THE COURT**

ROSE, J.

When defendant Department of Civil Service announced that it would recognize the parties to a same-sex marriage as spouses if their marriage were valid in the jurisdiction where it was solemnized, thereby allowing such spouses of state employees access to the benefits provided under the New York State Health Insurance Program (*see* Civil Service Law § 161 [1]; § 164 [1]),

plaintiffs commenced this action as individual taxpayers seeking a declaration that the Department's recognition of such marriages is illegal, unconstitutional and results in the unlawful disbursement of public funds. Defendants then moved for dismissal of the complaint, and plaintiffs cross-moved for summary judgment on their claims. Bound by the holding that New York's marriage recognition rule requires the recognition of out-of-state same-sex marriages in *Martinez v County of Monroe* (50 AD3d 189 [4th Dept 2008]), Supreme Court denied plaintiffs' cross motion and, after searching the record, granted summary judgment to defendants. Plaintiffs now appeal, arguing that the marriage recognition rule does not apply or, if it does, such marriages fall within an exception to the rule. Unpersuaded, we affirm Supreme Court's order.

While the type of marriage involved here is relatively novel, there are longstanding rules of law that have guided our courts in determining whether persons validly married elsewhere will be considered married in New York. Rooted ultimately in principles of comity and choice of law that give controlling effect to the laws of other jurisdictions unless they "would do violence to some strong public policy of this [s]tate" (*Byblos Bank Europe, S.A. v Sekerbank Turk Anonym Syrketi*, 10 NY3d 243, 247 [2008] [internal quotation marks and citation omitted]; *see Zurich Ins. Co. v Shearson Lehman Hutton*, 84 NY2d 309, 319 [1994]; Restatement [Second] of Conflict of Laws § 6), the well-settled marriage recognition rule "recognizes as valid a marriage considered valid in the place where celebrated" (*Van Voorhis v Brintnall*, 86 NY 18, 25 [1881]), and the courts of New York must follow that rule unless the out-of-state marriage falls within one of its two exceptions (*see Matter of May*, 305 NY 486, 490 [1953]; *Moore v Hegeman*, 92 NY 521, 524 [1883]; *Thorp v Thorp*, 90 NY 602, 605 [1882]; *Van Voorhis v Brintnall*, 86 NY at 26). The first exception occurs where there is a "New York statute expressing clearly the Legislature's intent to regulate within this [s]tate marriages of its domiciliaries solemnized abroad" (*Matter of May*, 305 NY at 493). Such a statute must convey, in express terms, a legislative intent to void a marriage legally entered into in another jurisdiction (*see Van Voorhis v Brintnall*, 86 NY at 34-35; *Matter of Peart*, 277 App Div 61, 70 [1950]). The second exception to the marriage recognition rule occurs in cases where an aspect of the out-of-state marriage is abhorrent to New York public policy, such as incest or polygamy (*see Matter of May*, 305 NY at 491; *Van Voorhis v Brintnall*, 86 NY at 26). This exception has been invoked

to preclude recognition of an out-of-state polygamous marriage (*see Earle v Earle*, 141 App Div 611 [1910]; *People v Ezeonu*, 155 Misc 2d 344 [1992]), an out-of-state incestuous marriage (*see Matter of Incuria v Incuria*, 155 Misc 755 [1935]) and an out-of-state marriage where one party was under the age of consent (*see Cunningham v Cunningham*, 206 NY 341, 349 [1912]).

Our courts have narrowly construed these two exceptions, applying the marriage recognition rule to recognize a wide variety of out-of-state marriages that would not qualify as marriages if they had been solemnized in New York. These include the second marriage of a divorced spouse even though such remarriage was expressly precluded at the time in New York by the former Domestic Relations Law (*see Fisher v Fisher*, 250 NY 313 [1929]; *Moore v Hegeman*, 92 NY 521 [1883]; *Thorp v Thorp*, 90 NY 602 [1882], *supra*; *Van Voorhis v Brintnall*, 86 NY at 18), a marriage solemnized in Rhode Island that would be considered incestuous in New York, but was not found to be offensive "to a degree regarded generally with abhorrence" (*Matter of May*, 305 NY at 493), common-law marriages that are valid in other states but could not be entered into in New York (*see Matter of Mott v Duncan Petroleum Trans.*, 51 NY2d 289 [1980]; *Matter of Yao You-Xin*, 246 AD2d 721 [1998]; *Matter of Coney v R.S.R. Corp.*, 167 AD2d 582 [1990], *lv denied* 77 NY2d 805 [1991]), marriages of persons younger than the legal age of consent to marriage in New York (*see Hilliard v Hilliard*, 24 Misc 2d 861 [1960]; *Donohue v Donohue*, 63 Misc 111 [1909]) and marriages by proxy that could not occur in New York (*see Fernandes v Fernandes*, 275 App Div 777 [1949]; *Matter of Valente*, 18 Misc 2d 701, 705 [1959]; *Ferraro v Ferraro*, 192 Misc 484 [1948]).

■ Given our longstanding application of the marriage recognition rule to determine whether out-of-state marriages not meeting our own definition of a marriage will, nevertheless, be recognized in New York, we must reject plaintiffs' initial contention that the rule can have no application here. Specifically, plaintiffs argue that the rule does not apply because same-sex marriages valid in the jurisdiction where solemnized are not "marriages," as that term is defined in New York. In every case in which the rule has been applied, however, the out-of-state marriage failed to meet New York's definition of a marriage in some respect. Also, while the Court of Appeals has held that the Domestic Relations Law limits marriages solemnized in New York to persons of the opposite

sex (*see Hernandez v Robles*, 7 NY3d 338, 357 [2006]) and stated that any revision of the statute specifying who can be validly married here "rests with our elected representatives" (*id.* at 379 [Graffeo, J., concurring]), it did not hold that same-sex marriages solemnized elsewhere would not be defined as marriages here, and it observed that the Legislature could rationally choose to permit same-sex couples to marry in New York (*see id.* at 358-359, 365). In addition, we note that the supreme courts of our neighboring states of Connecticut and Massachusetts have defined marriage in their states to include the marriage of same-sex couples (*see Kerrigan v Commissioner of Pub. Health*, 289 Conn 135, 957 A2d 407 [2008]; *Goodridge v Department of Pub. Health*, 440 Mass 309, 798 NE2d 941 [2003]). Thus, regardless of how we define marriage in New York, we must apply the marriage recognition rule to determine whether we will recognize same-sex out-of-state marriages for the purpose of according their parties spousal benefits.

Plaintiffs argue in the alternative that such marriages fall within one of the rule's two exceptions. Clearly, however, the rule's first exception is inapplicable because no New York statute expressly precludes recognition of a same-sex marriage solemnized elsewhere. While the Court of Appeals has held that the provisions of the Domestic Relations Law limit marriages solemnized in New York to opposite-sex couples (*see Hernandez v Robles*, 7 NY3d at 357), the Court did not go further and read those statutes as invalidating such marriages solemnized in other jurisdictions.

As for the second exception precluding recognition of an incestuous or polygamous marriage, we note that an out-of-state same-sex marriage would not fall within that preclusion unless the same-sex spouses were closely related or were more than two in number, situations not under consideration here. Nonetheless, since this exception is rooted in the idea that some marriages are abhorrent to New York public policy (*see Villafana v Villafana*, 275 App Div 810, 811 [1949, Callahan, J., dissenting]; *Godfrey v Spano*, 15 Misc 3d 809, 812-813 [2007], *affd* 57 AD3d 941 [2008]; *Matter of Incuria v Incuria*, 155 Misc at 759; *People v Kay*, 141 Misc 574, 578 [1931]; *see also Cunningham v Cunningham*, 206 NY at 349; *Langan v St. Vincent's Hosp. of N.Y.*, 25 AD3d 90, 101 [2005, Fisher, J., dissenting], *appeal dismissed* 6 NY3d 890 [2006]; *Matter of Bronislawa K. v Tadeusz K.*, 90 Misc 2d 183, 185 [1977]), we must consider

plaintiffs' argument that same-sex marriages should come within this exception because they are as abhorrent to public policy as incest and polygamy. New York's public policy, however, cannot be said to abhor the recognition of out-of-state same-sex marriages.

The Court of Appeals has defined New York's "public policy" as " 'the law of the [s]tate, whether found in the Constitution, the statutes or judicial records' " (*Mertz v Mertz*, 271 NY 466, 472 [1936], quoting *People v Hawkins*, 157 NY 1, 12 [1898]; *see Matter of Rhinelander*, 290 NY 31, 36 [1943]). Unlike a majority of the states, and despite having had the opportunity to do so (*see e.g.* 2007 NY Assembly Bill A4978), New York has not taken the controversial step of enacting legislation to deny full faith and credit to out-of-state same-sex marriages as permitted under the federal Defense of Marriage Act (*see* 28 USC § 1738C). In addition, although the NY Constitution does not compel recognition of same-sex marriages solemnized in New York (*see Hernandez v Robles*, 7 NY3d at 356), there is no New York court precedent holding that a New York statute or judicial decision precludes recognition of out-of-state same-sex marriages (*compare Gonzalez v Green*, 14 Misc 3d 641 [2006] [out-of-state same-sex marriage of New York residents in Massachusetts held to be invalid under the law of Massachusetts]; *Funderburke v New York State Dept. of Civ. Serv.*, 13 Misc 3d 284 [2006], *order vacated and appeal dismissed* 49 AD3d 809 [2008]). To the contrary, several courts have recognized such marriages (*see Martinez v County of Monroe*, 50 AD3d 189 [2008], *supra*; *C.M. v C.C.*, 21 Misc 3d 926 [2008]; *Golden v Paterson*, NYLJ, Sept. 8, 2008, at 19, col 3 [Sup Ct, Bronx County]; *Beth R. v Donna M.*, 19 Misc 3d 724 [Sup Ct, NY County 2008]; *Godfrey v Hevesi*, NYLJ, Sept. 18, 2007, at 28, col 1 [Sup Ct, Albany County]; *Godfrey v Spano*, 15 Misc 3d 809 [2007], *supra*). Furthermore, as the Court of Appeals has twice cautioned us, where the Domestic Relations Law does not expressly declare void a certain type of marriage validly solemnized outside of New York, the statute should not be extended by judicial construction (*see Matter of May*, 305 NY at 492; *Van Voorhis v Brintnall*, 86 NY at 33). Nor does our holding restrict the Legislature's ability to preclude recognition of out-of-state same-sex marriages in the future since the marriage recognition rule already admits of exceptions based upon statutory enactments. Accordingly, we conclude that the marriage recognition rule is applicable here

and warrants dismissal of plaintiffs' first cause of action alleging an unlawful disbursement of public funds.*

 Plaintiffs also claim that health insurance benefits cannot be extended to the parties to a same-sex marriage because they are not "spouses" as normally defined under Civil Service Law article XI. Once an out-of-state same-sex marriage is recognized in New York, however, each of its parties would be "a party to a marriage" and, thus, a "legal spouse" who would be entitled to the benefits, rights and obligations of that status (*Matter of Langan v State Farm Fire & Cas.*, 48 AD3d 76, 78 [2007]). The cases cited by plaintiffs in support of a contrary conclusion are readily distinguishable because they do not involve marriages and do not consider whether out-of-state same-sex marriages will be recognized in New York (*see id.*; *Langan v St. Vincent's Hosp. of N.Y.*, 25 AD3d 90 [2005], *supra*; *Matter of Valentine v American Airlines*, 17 AD3d 38 [2005], *supra*; *Matter of Cooper*, 187 AD2d 128 [1993], *appeal dismissed* 82 NY2d 801 [1993]).

 To the extent that plaintiffs claim that the Department violated the separation of powers doctrine by usurping the Legislature's authority, we are satisfied that the Department did not " 'go beyond stated legislative policy and prescribe a remedial device not embraced by the policy' " (*Matter of Citizens For An Orderly Energy Policy v Cuomo*, 78 NY2d 398, 410 [1991], quoting *Matter of Broidrick v Lindsay*, 39 NY2d 641, 645-646 [1976]). Rather, the Department's recognition of same-sex spouses falls squarely within the scope of the policy expressed in Civil Service Law §§ 161 and 164 to provide benefits to the spouses and dependent children of state employees. Moreover, in recognizing those marriages, the Department has not usurped the Legislature's power to subsequently determine by positive legislation that out-of-state same-sex marriages cannot be recognized in New York. We further find no merit in plaintiffs' alternate claim that the Department violated

* While the concurrence suggests that we are "changing longstanding law," it fails to show why the marriage recognition rule should no longer be applied in New York and cites no contrary expression of public policy that would preclude recognition of out-of-state same-sex marriages under that rule. We also have reservations about the breadth of discretion that the concurrence attributes to defendants in order to find an alternate basis to uphold their determination here. We have previously observed that, absent a legislative redefinition, the term "legal spouse" could not reasonably be interpreted to include same-sex partners (*see Matter of Langan v State Farm Fire & Cas.*, 48 AD3d 76, 79 [2007]; *Matter of Valentine v American Airlines*, 17 AD3d 38, 40-41 [2005]). Thus, to do what the concurrence suggests would improperly intrude into the Legislature's domain.

NY Constitution, article VII, § 8 (1) by using public funds to aid a former Governor's personal goal of creating civil marriage equality in New York. Inasmuch as the Department's policy furthers a valid governmental purpose to benefit public employees, it cannot fairly be said that it is invalid as promoting a private undertaking (*cf. Matter of Schulz v State of New York*, 86 NY2d 225, 235 [1995]).

■ Finally, the determination to recognize same-sex marriages is not invalid for the Department's failure to comply with the formal rule-making procedures of the State Administrative Procedure Act because the determination is an interpretative statement that is merely explanatory (*see* State Administrative Procedure Act § 102 [2] [b] [iv]; *Cubas v Martinez*, 8 NY3d 611, 621 [2007]; *Matter of Elcor Health Servs. v Novello*, 100 NY2d 273, 279 [2003]; *Matter of HMI Mech. Sys. v McGowan*, 277 AD2d 657, 659 [2000], *lv denied* 96 NY2d 705 [2001]; *Matter of Abreu v Coughlin*, 161 AD2d 844, 845 [1990]). The Department's expansion of the definition of the term "spouse" is a reasonable interpretation of existing Department regulations that define the term "dependent" as "includ[ing] the spouse of an employee or retired employee" (4 NYCRR 73.1 [h]).

LAHTINEN, J. (concurring). We respectfully concur in the result, but upon a much narrower ground.

Action taken by the state pertaining to its own employees is different from changing longstanding law that affects all of the state's citizens. The Legislature has vested the President of the Civil Service Commission with broad discretion in defining, for purposes of health insurance coverage for state employees, the terms spouse and dependent children (*see* Civil Service Law § 164; *Slattery v City of New York*, 179 Misc 2d 740, 754 [1999], *mod* 266 AD2d 24 [1999], *appeal dismissed* 94 NY2d 897 [2000], *lv dismissed and denied* 95 NY2d 823 [2000]; *cf. Matter of Police Assn. of City of Mount Vernon v New York State Pub. Empl. Relations Bd.*, 126 AD2d 824, 825-826 [1987]). "[T]he Commission's interpretation of its regulations is entitled to deference" (*Matter of Kirmayer v New York State Dept. of Civ. Serv.*, 24 AD3d 850, 851 [2005]). State employees have been entitled for more than a decade to include coverage for a same-sex partner under the state's health insurance plan as a domestic partner (*see generally* Fisher, *Cuomo Decides to Extend Domestic-Partner Benefits*, New York Times, June 29, 1994, at B4, col 5). The practical effect of the determination here is to give an out-of-

state document formalizing a same-sex relationship the same weight as the affidavit required to receive such benefits as a domestic partner, which is a narrow accommodation to state employees in an area where the Legislature has specifically accorded the Commission broad discretion.

The Legislature is the governmental body best able to comprehensively and cogently address the issues in this emerging field (*see generally Hernandez v Robles*, 7 NY3d 338, 361, 366 [2006]).[1] In deference to such body and in light of the potentially expansive implications of the majority's approach,[2] we would decide this case narrowly, as this record permits (*cf. Godfrey v Spano*, 57 AD3d 941 [2008]).

PETERS, J.P., and KANE, J., concur with ROSE, J.; LAHTINEN, J., concurs in a separate opinion in which MALONE JR., J., concurs.

Ordered that the order is affirmed, without costs.

---

**1.** Nearly every other state has addressed this issue by legislative enactment or public referendum (*see* National Conference of State Legislatures, *Same Sex Marriage, Civil Unions and Domestic Partnerships*, http://www.ncsl.org/programs/cyf/samesex.htm [accessed Dec. 2, 2008]).

**2.** *See e.g.* NY St Ins Dept 2008 Circular Letter No. 27 (Nov. 21, 2008) (relying on the similar analysis employed in the Fourth Department's decision in *Martinez v County of Monroe* [50 AD3d 189 (2008), *lv dismissed* 10 NY3d 856 (2008)] to direct insurance companies doing business in New York to recognize out-of-state same-sex marriages or face unfair practice and/or discrimination charges).