OPINION OF THE COURT
Bellacosa, J.
At the heart of this appeal surrounding a multipronged dispute between Lia Ratsutsky and Ilya Gotlib is her suit for divorce from him under New York law. Since she concedes that she was already divorced from him in 1976 in Odessa, The Ukraine, under then-Soviet law, she faces a formidable *699 obstacle to obtaining such relief under comity principles respected and applied under New York jurisprudence.
The parties were married in the USSR in 1976 and divorced within a year. The wife initiated that divorce, appeared in court with her husband, and secured the sought-after bilateral divorce decree. She never renounced or disclaimed the validity and effect of that divorce until she commenced this New York litigation, some 14 years later. She and her former husband did eventually emigrate separately, as did her extended family, in the late 1970’s. During part of the 1980’s, she and her former husband lived together in Brooklyn, and while they did not marry or remarry, a daughter was born to them in 1980. The parties filed joint tax returns for the periods when they were together. Eventually, they went their separate ways and this litigation ensued. Though the litigation involves visitation and support issues, only the divorce aspect is before this Court on this appeal.
Appellant Ratsutsky claims that the Soviet divorce was a "sham” and was sought "pro forma” to ease the parties’ respective efforts and those of the Ratsutsky family to emigrate as Jewish-Soviet citizens to the United States. Her central contention is that the divorce was needed because married Jews were otherwise "barred” or "delayed” or burdened with "Soviet red tape” from emigrating.
Supreme Court ruled that there were questions of fact surrounding the allegedly legally coercive circumstances and public policies of the Soviet affecting the parties’ divorce. The Appellate Division disagreed, one Justice dissenting, and ruled that the validity of the Soviet divorce was unassailable and that the parties’ voluntary joint effort to secure the very relief they sought — divorce—was likewise incontestable. That Court, nevertheless, granted Ratsutsky leave to appeal to this Court on a certified question. We answer it in the affirmative as we affirm the order of the Appellate Division granting the former husband, Gotlib, summary judgment dismissing his former wife’s New York divorce action against him.
This divorce action may lie in New York only if the parties are still married. For New York to treat them as still married, it would have to disregard the facially valid and undeniably regular Soviet divorce decree from 1976. Such a departure from settled comity principles can be justified only as a rare exception (Greschler v Greschler, 51 NY2d 368, 376-377). Some evidentiary basis to support the proposition that the particu *700 lar divorce decree of the foreign country was the product of individualized fraud or coercion or oppression or rested on proximately related public policies fundamentally offensive and inimical to those of this State must be demonstrated (id,.; Feinberg v Feinberg, 40 NY2d 124).
This high burden springs from an ordered sense of respect and tolerance for the adjudications of foreign Nations, paralleling that commanded among the States by the Full Faith and Credit Clause of the United States Constitution (US Const, art IV, § 1; see generally, Restatement [Second] of Conflict of Laws § 98). The comity doctrine is also pragmatically necessary to deal properly and fairly with the millions of relational and transactional decrees and determinations that would otherwise be put at risk, uncertainty and undoing in a world of different people, Nations and diverse views and policies.
This Court is not unmindful or unconcerned about judicially noticed and record-referenced policies of oppression against Jews and others by the former Soviet government, which are anathema to New Yorkers and all Americans with respect to human rights, freedom of religion and political expression and travel. Appellant Ratsutsky’s pleadings and summary judgment submissions, however, are insufficient as they relate to the central issues and burdens she carries in this New York litigation context. There is no evidence or inferential potentiality on this record that the contention concerning married Jews being blocked from jointly emigrating out of the Soviet Union was indeed a policy or a fact that directly or adversely affected the particular efforts of these parties in respect to their seeking and obtaining a Soviet divorce in 1976.
This Court requires particularization in claims emanating out of public policy assertions, a term "frequently used in a very vague, loose or inaccurate sense” (Mertz v Mertz, 271 NY 466, 472). Even if we were to assume that such a particularized repugnant policy existed, there is an insufficient basis in this record to substantiate the view that a question of fact exists relating that policy to the bilateral, voluntarily secured divorce of these parties. This record discloses no cause and effect correlation between the conclusory assertion and the facially valid divorce decree. The equivocality reflected in this record about "delays” and "red tape” in emigrating is not the kind or quantum of specificity our settled principles require to *701 raise a cognizable legal coercion or public policy claim. Indeed, the emigration of appellant’s parents — married Jews — and her married siblings at or about the same time of her own emigration contradicts the very policy which is vaguely asserted as somehow divesting the otherwise valid Soviet divorce decree of legitimate recognition. New York cannot breezily disregard documented facts and facially regular records based on generalized and significantly belated claims (Mertz v Mertz, 271 NY 466, supra). Such a course of action would seriously undermine the "rare” public policy exception to the appropriate application of the doctrine of comity (Greschler v Greschler, 51 NY2d 368, 377, supra; see also, Feinberg v Feinberg, 40 NY2d 124, supra). Indeed, it would substitute an amorphous and inadvisably open-ended escape valve.
We are also satisfied that the conduct of the parties after they immigrated to Brooklyn separately, and then undertook a living arrangement together, cannot in these circumstances be used to deprive the Soviet decree of its validity or recognition in New York. These subsequent events are not enough to create a pertinent question of fact, nor do they manifest a cognizable repudiation or dubiety about the validity of the Soviet divorce. In no event can their subsequent activity be deemed under New York law to constitute a reformalizing of the legally terminated marriage.
Also, it appears uncontested that in 1986 appellant swore in her United States naturalization papers that she was "divorced”. This sworn assertion to the United States Government occurred at a time and place when she was far removed from general or particularized Soviet oppressive policies toward her or toward married Jews wishing to emigrate from that Nation. Instead of any hint that she deemed the divorce decree as anything but valid and binding, she swore and classified her status under the terms and effects of that nine-year-old decree.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
Order affirmed, etc.