[920 NE2d 328, 892 NYS2d 272]

MARGARET GODFREY et al., Appellants, v ANDREW J. SPANO, as Westchester County Executive, et al., Respondents, and NEW YORK STATE COMPTROLLER, Intervenor-Respondent.

KENNETH J. LEWIS et al., Appellants, v NEW YORK STATE DEPART- MENT OF CIVIL SERVICE et al., Respondents.

Argued October 13, 2009; decided November 19, 2009

360

## POINTS OF COUNSEL

*Alliance Defense Fund,* Scottsdale, Arizona (*Brian W. Raum, Benjamin W. Bull,* of the Arizona bar, admitted pro hac vice, and *James A. Campbell,* of the Arizona bar, admitted pro hac vice, of counsel), and *Ruta & Soulios, LLP,* New York City (*Joseph A. Ruta* of counsel), for appellants in the first above-entitled action. I. Comity principles prohibit a county executive from ordering that all county departments, boards, agencies and commissions recognize same-sex relationships considered "marriages" by other sovereign jurisdictions. (*Frances B. v Mark B.,* 78 Misc 2d 112; *Anonymous v Anonymous,* 67 Misc 2d 982; *Hernandez v Robles,* 7 NY3d 338; *Marshall v Sherman,* 148 NY 9; *Hilton v Guyot,* 159 US 113; *J. Zeevi & Sons v Grindlays Bank [Uganda],* 37 NY2d 220; *Petersen v Chemical Bank,* 32 NY 21; *Baker v General Motors Corp.,* 522 US 222; *Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574; *Matter of Langan v State Farm Fire & Cas.,* 48 AD3d 76.) II. Home-rule principles prohibit county executives from dictating which out-of-state unions will be recognized as marriages. (*Seaman v Fedourich,* 16 NY2d 94; *Jancyn Mfg. Corp. v Suffolk County,* 71 NY2d 91; *Slattery v City of New York,* 179 Misc 2d 740, 266 AD2d 24; *Fearon v Treanor,* 272 NY 268; *Albany Area Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372; *Matter of Ames v Smoot,* 98 AD2d 216; *New York State Club Assn. v City of New York,* 69 NY2d 211; *Consolidated Edison Co. of N.Y. v Town of Red Hook,* 60 NY2d 99; *Robin v Incorporated Vil. of Hempstead,* 30 NY2d 347; *Clark v Cuomo,* 66 NY2d 185.)

*Alliance Defense Fund,* Scottsdale, Arizona (*Brian W. Raum,*

*Benjamin W. Bull,* of the Arizona bar, admitted pro hac vice, and *James A. Campbell,* of the Arizona bar, admitted pro hac vice, of counsel), and *Cutler, Trainor & Cutler, LLP,* Malta (*James P. Trainor* of counsel), for appellants in the second above-entitled action. I. Comity principles prohibit executive officials from recognizing same-sex relationships considered "marriages" by other sovereign jurisdictions. (*Frances B. v Mark B.,* 78 Misc 2d 112; *Anonymous v Anonymous,* 67 Misc 2d 982; *Hernandez v Robles,* 7 NY3d 338; *Marshall v Sherman,* 148 NY 9; *Hilton v Guyot,* 159 US 113; *J. Zeevi & Sons v Grindlays Bank [Uganda],* 37 NY2d 220; *Petersen v Chemical Bank,* 32 NY 21; *Baker v General Motors Corp.,* 522 US 222; *Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574; *Matter of Langan v State Farm Fire & Cas.,* 48 AD3d 76.) II. The Department of Civil Service acted inconsistently with the Legislature, exceeded its statutory authority, and thus violated the separation of powers doctrine. (*Under 21, Catholic Home Bur. for Dependent Children v City of New York,* 65 NY2d 344; *Pataki v New York State Assembly,* 4 NY3d 75; *Rapp v Carey,* 44 NY2d 157; *Subcontractors Trade Assn. v Koch,* 62 NY2d 422; *Matter of Broidrick v Lindsay,* 39 NY2d 641; *Clark v Cuomo,* 66 NY2d 185; *Matter of Cooper,* 187 AD2d 128; *Matter of Valentine v American Airlines,* 17 AD3d 38; *Raum v Restaurant Assoc.,* 252 AD2d 369; *Langan v St. Vincent's Hosp. of N.Y.,* 25 AD3d 90.)

*Charlene M. Indelicato, County Attorney,* White Plains (*Mary Lynn Nicolas-Brewster* and *Stacey Dolgin-Kmetz* of counsel), for Andrew J. Spano, respondent in the first above-entitled action. I. The Appellate Division correctly held that plaintiffs failed to state a claim under section 51 of the General Municipal Law against County Executive Spano. (*Mesivta of Forest Hills Inst. v City of New York,* 58 NY2d 1014; *Kaskel v Impellitteri,* 306 NY 73, 347 US 934; *Matter of Korn v Gulotta,* 72 NY2d 363; *Matter of Meehan v County of Westchester,* 3 AD3d 533, 2 NY3d 706; *Slattery v City of New York,* 179 Misc 2d 740, 266 AD2d 24, 94 NY2d 897; *Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva,* 92 NY2d 326; *Lewis v New York State Dept. of Civ. Serv.,* 60 AD3d 216, 12 NY3d 705; *Wein v City of New York,* 80 Misc 2d 894, 47 AD2d 367; *Betters v Knabel,* 288 AD2d 872, 98 NY2d 659; *Montecalvo v City of Utica,* 170 Misc 2d 107, 233 AD2d 960, 89 NY2d 938.) II. Plaintiffs cannot maintain an action under the Municipal Home Rule Law and the New York State Constitution. (*Kadish v Roosevelt Raceway Assoc.,* 183 AD2d 874; *Matter of Meehan v County of Westchester,* 3 AD3d 533; *Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761;

*Matter of Bradford Cent. School Dist. v Ambach,* 56 NY2d 158; *Diederich v Rockland County Police Chiefs' Assn.,* 33 AD3d 653, 8 NY3d 875; *Boryszewski v Brydges,* 37 NY2d 361; *Citizens Util. Bd. v State of New York,* 267 AD2d 838, 95 NY2d 757; *Clark v Cuomo,* 66 NY2d 185; *Matter of Clark v Town Bd. of Town of Clarkstown,* 28 AD3d 553; *Matter of Madison Sq. Garden, L.P. v New York Metro. Transp. Auth.,* 19 AD3d 284.)

*Andrew M. Cuomo, Attorney General,* New York City (*Sasha Samberg-Champion, Barbara D. Underwood* and *Benjamin N. Gutman* of counsel), for intervenor-respondent in the first above-entitled action and New York State Department of Civil Service and another, respondents in the second above-entitled action. I. A same-sex marriage validly performed in another jurisdiction is entitled to recognition in New York. (*Matter of May,* 305 NY 486; *Van Voorhis v Brintnall,* 86 NY 18; *Matter of Mott v Duncan Petroleum Trans.,* 51 NY2d 289; *Shea v Shea,* 294 NY 909; *Carpenter v Carpenter,* 208 AD2d 882; *Fernandes v Fernandes,* 275 App Div 777; *Matter of Valente,* 18 Misc 2d 701; *People v Ezeonu,* 155 Misc 2d 344; *Crair v Brookdale Hosp. Med. Ctr., Cornell Univ.,* 94 NY2d 524; *Matter of Gotlib v Ratsutsky,* 83 NY2d 696.) II. Neither the Department of Civil Service nor the Westchester County Executive has made any unlawful expenditure, regardless of whether New York recognizes same-sex marriages. (*Matter of Brooklyn Assembly Halls of Jehovah's Witnesses, Inc. v Department of Envtl. Protection of City of N.Y.,* 11 NY3d 327; *Samiento v World Yacht Inc.,* 10 NY3d 70; *Matter of O'Brien v Spitzer,* 7 NY3d 239; *Syracuse Urban Renewal Agency v State of New York,* 106 AD2d 23; *Braschi v Stahl Assoc. Co.,* 74 NY2d 201; *Slattery v City of New York,* 266 AD2d 24; *Beresford Apts. v City of New York,* 238 AD2d 218; *Saratoga County Chamber of Commerce v Pataki,* 100 NY2d 801; *Matter of Altamore v Barrios-Paoli,* 90 NY2d 378; *McMillen v Browne,* 14 NY2d 326.)

*Lambda Legal Defense and Education Fund, Inc.,* New York City (*Susan L. Sommer* of counsel), and *Kramer Levin Naftalis & Frankel LLP* (*Jeffrey S. Trachtman, Joshua Glick, Michael B. Eisenkraft* and *Jason M. Moff* of counsel), for Michael Sabatino and others, respondents in the first and second above-entitled actions. I. Out-of-state marriages of same-sex couples are entitled to legal recognition in New York under long-standing comity principles. (*Matter of May,* 305 NY 486; *Thorp v Thorp,* 90 NY 602; *Van Voorhis v Brintnall,* 86 NY 18; *Matter of Mott v Duncan Petroleum Trans.,* 51 NY2d 289; *Matter of*

*Watts,* 31 NY2d 491; *People v Haynes,* 26 NY2d 665; *Matter of Farber v U. S. Trucking Corp.,* 26 NY2d 44; *Shea v Shea,* 294 NY 909; *Matter of Catapano,* 17 AD3d 672; *Katebi v Hooshiari,* 288 AD2d 188.) II. Appellants' arguments distort New York law and public policy. (*Hernandez v Robles,* 7 NY3d 338; *Martinez v County of Monroe,* 50 AD3d 189; *Beth R. v Donna M.,* 19 Misc 3d 724; *Langan v St. Vincent's Hosp. of N.Y.,* 25 AD3d 90; *Matter of Langan v State Farm Fire & Cas.,* 48 AD3d 76; *Kraut v Morgan & Brother Manhattan Stor. Co.,* 38 NY2d 445; *Glaser v Glaser,* 276 NY 296; *Mertz v Mertz,* 271 NY 466; *Straus & Co. v Canadian Pac. Ry. Co.,* 254 NY 407; *Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574.) III. The decisions below should be affirmed for the additional reasons addressed in the government respondents' briefs. (*Mesivta of Forest Hills Inst. v City of New York,* 58 NY2d 1014; *Montecalvo v City of Utica,* 170 Misc 2d 107; *Gaynor v Rockefeller,* 21 AD2d 92, 15 NY2d 120.)

*Stephen J. Acquario, General Counsel, New York State Association of Counties,* Albany (*Robert W. Gibbon* of counsel), for New York State Association of Counties, amicus curiae in the first above-entitled action. I. The Westchester County Executive Order was legally and constitutionally executed. (*Matter of Combs v Nickerson,* 38 Misc 2d 242; *New York Trap Rock Corp. v Town of Clarkstown,* 299 NY 77; *Slattery v City of New York,* 179 Misc 2d 740.) II. There is no valid claim set forth under General Municipal Law § 51. (*Kaskel v Impellitteri,* 306 NY 73; *Western N.Y. Water Co. v City of Buffalo,* 242 NY 202; *Altschul v Ludwig,* 216 NY 459; *Hurley v Tolfree,* 308 NY 358; *Mesivta of Forest Hills Inst. v City of New York,* 58 NY2d 1014; *Talcott v City of Buffalo,* 125 NY 280; *Wein v City of New York,* 80 Misc 2d 894; *Gusdore Corp. v Michaels,* 13 Misc 2d 762, 8 AD2d 663; *Berkey v Downing,* 68 Misc 2d 595, 39 AD2d 1008.)

*Frederick C. Veit,* Briarcliff Manor, for New Yorkers for Constitutional Freedoms, amicus curiae in the first above-entitled action. I. Limiting marriage to New York's traditional definition of one man and one woman is not tautological, as an analogy to chemistry demonstrates. (*Smelt v County of Orange,* 447 F3d 673; *Hernandez v Robles,* 7 NY3d 338; *Maynard v Hill,* 125 US 190.) II. The marriage recognition rule should be adapted because a single simple adjustment will allow the current rule to remain in place when one man-one woman marriage is at issue and will allow the Legislature to act in the first instance when a redefinition of marriage is at issue. (*Community Bd. 7 of Borough of Manhattan v Schaffer,* 84 NY2d 148; *Matter*

*of May,* 305 NY 486; *Cunningham v Cunningham,* 206 NY 341; *Bronson v Swensen,* 500 F3d 1099.)

*Richard E. Barnes,* Albany, *Thomas More Society,* Northbrook, Illinois (*Paul Benjamin Linton* of counsel), and *Thomas More Society,* Chicago, Illinois (*Thomas Brejcha* of counsel), for New York State Catholic Conference, amicus curiae in the second above-entitled action. Nothing in this Court's jurisprudence requires the State of New York or any of its agencies or political subdivisions to recognize the validity of a lawful out-of-state marriage between two persons who could not have married each other in New York. (*Hernandez v Robles,* 7 NY3d 338; *Matter of May,* 305 NY 486; *Van Voorhis v Brintnall,* 86 NY 18; *Thorp v Thorp,* 90 NY 602; *Moore v Hegeman,* 92 NY 521; *Funderburke v New York State Dept. of Civ. Serv.,* 13 Misc 3d 284, 49 AD3d 809; *Storrs v Holcomb,* 168 Misc 2d 898; *Martinez v County of Monroe,* 50 AD3d 189; *Cunningham v Cunningham,* 206 NY 341; *Reid v Reid,* 72 Misc 214, 146 App Div 916.)

*Law Offices of Robert W. Dapelo, P.C.,* Patchogue (*Robert W. Dapelo* of counsel), and *Marriage Law Foundation,* Lehi, Utah (*William C. Duncan* of counsel), for Family Watch International, amicus curiae in the second above-entitled action. I. For purposes of marriage recognition, as in all other aspects of New York law, marriage is the union of a man and a woman. (*Hernandez v Robles,* 7 NY3d 338.) II. The Department of Civil Service does not have authority to redefine marriage for any purpose. (*Hernandez v Robles,* 7 NY3d 338; *Saratoga County Chamber of Commerce v Pataki,* 100 NY2d 801; *Matter of New York State Health Facilities Assn. v Axelrod,* 77 NY2d 340; *Matter of Campagna v Shaffer,* 73 NY2d 237.) III. The Department of Civil Service memorandum redefining marriage for purposes of interstate recognition threatens important public policies. (*Hernandez v Robles,* 7 NY3d 338; *Rapp v Carey,* 44 NY2d 157; *Saratoga County Chamber of Commerce v Pataki,* 100 NY2d 801; *Bourquin v Cuomo,* 85 NY2d 781.)

*Proskauer Rose LLP,* New York City (*Peter J.W. Sherwin* and *Kenneth E. Aldous* of counsel), and *Michael E. Getnick,* Albany, for New York State Bar Association, amicus curiae in the second above-entitled action. I. New York's common law of comity in the marriage context is long-standing and well established, dictates the result reached by the lower courts here, and should not be altered merely to achieve a different result. (*Matter of Mott v Duncan Petroleum Trans.,* 51 NY2d 289; *Matter of May,*

305 NY 486; *Van Voorhis v Brintnall,* 86 NY 18; *Carpenter v Carpenter,* 208 AD2d 882; *Fernandes v Fernandes,* 275 App Div 777; *Matter of Peart,* 277 App Div 61; *Shea v Shea,* 268 App Div 677, 294 NY 909; *Hernandez v Robles,* 7 NY3d 338; *Earle v Earle,* 141 App Div 611; *People v Ezeonu,* 155 Misc 2d 344.) II. New York law recognizes marriages of same-sex couples validly entered in other jurisdictions, and this Court's decision in *Hernandez v Robles* (7 NY3d 338 [2006]) does not dictate a contrary result.

*James R. Sandner,* Latham, *Elizabeth R. Schuster, Wendy M. Star* and *Shawn T. Kelly* for New York State United Teachers, amicus curiae in the first and second above-entitled actions. I. New York State law requires recognition of same-sex marriages validly performed in other jurisdictions. (*Matter of May,* 305 NY 486; *Van Voorhis v Brintnall,* 86 NY 18; *Matter of Mott v Duncan Petroleum Trans.,* 51 NY2d 289; *Shea v Shea,* 294 NY 909; *Carpenter v Carpenter,* 208 AD2d 882; *Fernandes v Fernandes,* 275 App Div 777; *Matter of Valente,* 18 Misc 2d 701; *Matter of Ziegler v Cassidy's Sons,* 220 NY 98; *People v Ezeonu,* 155 Misc 2d 344; *Haviland v Halstead,* 34 NY 643.) II. The Department of Civil Service properly recognized validly performed out-of-state same-sex marriages for the New York State Health Insurance Program enrollment. (*Matter of Brooklyn Assembly Halls of Jehovah's Witnesses, Inc. v Department of Envtl. Protection of City of N.Y.,* 11 NY3d 327; *Samiento v World Yacht Inc.,* 10 NY3d 70; *Syracuse Urban Renewal Agency v State of New York,* 106 AD2d 23; *Braschi v Stahl Assoc. Co.,* 74 NY2d 201; *Matter of O'Brien v Spitzer,* 7 NY3d 239.) III. Westchester County Executive Andrew J. Spano properly exercised his authority when he issued Executive Order No. 3 of 2006. (*Slattery v City of New York,* 179 Misc 2d 740, 266 AD2d 24, 94 NY2d 897; *Matter of Incorporated Vil. of Mineola v International Bhd. of Teamsters, AFL-CIO, Local 808,* 11 Misc 3d 844; *Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva,* 92 NY2d 326; *Matter of Korn v Gulotta,* 72 NY2d 363; *Wein v City of New York,* 80 Misc 2d 894, 47 AD2d 367; *Betters v Knabel,* 288 AD2d 872, 98 NY2d 659; *Montecalvo v City of Utica,* 170 Misc 2d 107, 233 AD2d 960, 89 NY2d 938; *Matter of Bernstein v Feiner,* 13 AD3d 519; *Gaynor v Rockefeller,* 15 NY2d 120; *Mesivta of Forest Hills Inst. v City of New York,* 58 NY2d 1014.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Susan Paulson* and *Leonard Koerner* of counsel), for City of New York, amicus curiae in the first and second above-entitled

actions. I. The recognition of validly performed out-of-state same-sex marriages is neither barred by statute nor in conflict with New York policy. (*Matter of May,* 305 NY 486; *Van Voorhis v Brintnall,* 86 NY 18; *Martinez v County of Monroe,* 50 AD3d 189, 10 NY3d 856; *Moore v Hegeman,* 92 NY 521; *Thorp v Thorp,* 90 NY 602; *Matter of Mott v Duncan Petroleum Trans.,* 51 NY2d 289; *Fernandes v Fernandes,* 275 App Div 777; *Matter of Peart,* 277 App Div 61; *Matter of Jacob,* 86 NY2d 651; *Braschi v Stahl Assoc. Co.,* 74 NY2d 201.) II. The Westchester County Executive and New York State Department of Civil Service acted within the scope of their authority in directing the recognition of same-sex marriages. (*Slattery v City of New York,* 179 Misc 2d 740, 266 AD2d 24, 94 NY2d 897, 95 NY2d 823.)

*McDermott Will & Emery LLP,* New York City (*Lisa A. Linsky, Kathryn C. Goyer* and *Rachel Hundley* of counsel), and *Carmelyn Malalis* for New York City Bar Association, amicus curiae in the first and second above-entitled actions. I. The New York common law requires that a validly performed out-of-state marriage must be recognized as valid in New York. (*Martinez v County of Monroe,* 50 AD3d 189; *Beth R. v Donna M.,* 19 Misc 3d 724; *Van Voorhis v Brintnall,* 86 NY 18; *Matter of May,* 305 NY 486; *Matter of Mott v Duncan Petroleum Trans.,* 51 NY2d 289; *Matter of Watts,* 31 NY2d 491; *Shea v Shea,* 294 NY 909; *Matter of Valente,* 18 Misc 2d 701; *Hilliard v Hilliard,* 24 Misc 2d 861; *Sung Hwan Co., Ltd. v Rite Aid Corp.,* 7 NY3d 78.) II. Recognition of out-of-state marriages of same-sex couples does not violate the doctrine of separation of powers. (*Golden v Paterson,* 23 Misc 3d 641; *Clark v Cuomo,* 66 NY2d 185; *Saratoga County Chamber of Commerce v Pataki,* 100 NY2d 801; *Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.,* 2 NY3d 249; *Raffellini v State Farm Mut. Auto. Ins. Co.,* 9 NY3d 196; *Matter of Citizens For An Orderly Energy Policy v Cuomo,* 78 NY2d 398; *Matter of Cooper,* 187 AD2d 128; *Matter of Valentine v American Airlines,* 17 AD3d 38; *Raum v Restaurant Assoc.,* 252 AD2d 369; *Langan v St. Vincent's Hosp. of N.Y.,* 25 AD3d 90.)

*Tobias Barrington Wolff,* Philadelphia, Pennsylvania, for Tobias Barrington Wolff and others, amici curiae in the first and second above-entitled actions. This case is an inappropriate vehicle for reconsidering New York's long embrace of the place-of-celebration rule. (*Van Voorhis v Brintnall,* 86 NY 18; *Matter of May,* 305 NY 486; *Matter of Mott v Duncan Petroleum Trans.,* 51 NY2d 289; *Matter of Farber v U. S. Trucking Corp.,* 26 NY2d

44; *People v Onofre,* 51 NY2d 476; *Lawrence v Texas,* 539 US 558; *Moore v East Cleveland,* 431 US 494; *Muth v Frank,* 412 F3d 808; *Matter of Nakoneczna v Eisenberg,* 60 AD2d 403; *Matter of Brown v Brown,* 51 Misc 2d 839.)

*Paul, Weiss, Rifkind, Wharton & Garrison LLP,* New York City (*Roberta A. Kaplan* of counsel), *Arthur Eisenberg, Matthew Faiella* and *Rose Saxe* for New York Civil Liberties Union and others, amici curiae in the first and second above-entitled actions. I. The marriage recognition rule applies to all marriages, including marriages of same-sex couples. (*Romer v Evans,* 517 US 620; *Van Voorhis v Brintnall,* 86 NY 18; *Thorp v Thorp,* 90 NY 602; *Moore v Hegeman,* 92 NY 521; *Matter of May,* 305 NY 486; *Matter of Farber v U. S. Trucking Corp.,* 26 NY2d 44; *Matter of Mott v Duncan Petroleum Trans.,* 51 NY2d 289; *Fernandes v Fernandes,* 275 App Div 777; *Matter of Valente,* 18 Misc 2d 701; *Hilliard v Hilliard,* 24 Misc 2d 861.) II. New York common law compels recognition of a same-sex couple's valid out-of-state marriage. (*Matter of May,* 305 NY 486; *Van Voorhis v Brintnall,* 86 NY 18; *Martinez v County of Monroe,* 50 AD3d 189; *Welsbach Elec. Corp. v MasTec N. Am., Inc.,* 7 NY3d 624; *Hernandez v Robles,* 7 NY3d 338; *Braschi v Stahl Assoc. Co.,* 74 NY2d 201; *Levin v Yeshiva Univ.,* 96 NY2d 484; *Matter of Jacob,* 86 NY2d 651; *Matter of Donna S.,* 23 Misc 3d 338; *Matter of Daniels,* 2 Misc 3d 413.)

## OPINION OF THE COURT

PIGOTT, J.

Plaintiff taxpayers challenge two directives by executive and county officials that recognize out-of-state same-sex marriages for purposes of public employee health insurance coverage and other benefits. We conclude that plaintiffs' actions were properly dismissed.

### I.

Four states—Massachusetts, Connecticut, Iowa and Vermont—now issue marriage licenses to same-sex couples, without any residency requirement, as does Canada.[1] As a consequence, many same-sex couples who are residents of New York State have traveled to those jurisdictions and married. In light of

---

1. New Hampshire will begin issuing marriage licenses to same-sex couples effective January 1, 2010. Internationally, in addition to Canada, same-sex couples may legally marry in The Netherlands, Belgium, Spain, South Africa, Norway and Sweden.

these developments, several state and county officials have recently issued general directives relating to the recognition of those out-of-state same-sex marriages.[2] The present actions involve facial challenges to the legality of two of these directives, namely a Policy Memorandum issued by the Commissioner of the New York State Department of Civil Service and an Executive Order issued by the County Executive of the County of Westchester.

In June 2006, defendant Andrew J. Spano, Westchester County Executive, citing opinion letters of the Attorney General and the Comptroller,[3] issued an Executive Order, with the following direction:

> "WHEREAS, the County of Westchester has long provided health benefits to the qualifying domestic partners of its members; and

> "WHEREAS, in September of 2002, the County of Westchester, in seeking to support all caring, committed and responsible family units, enacted its Domestic Partnership Registry Law, which allowed unmarried couples in committed relationships and who share common households to be able to register those relationships formally and to obtain a Certificate of Domestic Partnership, which serves as an independent verification of such partnership, and which may, in certain circumstances, be a condition

---

**2.** In *Hernandez v Robles* (7 NY3d 338 [2006]), we held that New York's Domestic Relations Law restricts marriage to opposite-sex couples and that this limitation does not violate the New York State Constitution's Equal Protection and Due Process Clauses. We concluded that our Constitution does not require that marriage licenses be granted to same-sex couples, and we expressed our hope that the participants in the controversy over same-sex marriage would address their arguments to our Legislature, and that the Legislature would decide the question whether same-sex couples should be permitted to marry in New York (*see* 7 NY3d at 366). We did not address the question of recognition of out-of-state same-sex marriages.

**3.** The Solicitor General of New York issued an informal opinion letter in March 2004, on behalf of the Attorney General, concluding that, although New York's Domestic Relations Law does not authorize same-sex marriages, "New York law presumptively requires that parties to such unions must be treated as spouses for purposes of New York law" (2004 Ops Atty Gen No. 2004-1, at 16 [Mar. 3, 2004]). The opinion relied on New York's common-law marriage recognition rule as the basis for this conclusion. The Office of the State Comptroller issued a similar opinion letter in October 2004 indicating that "[t]he Retirement System will recognize a same-sex Canadian marriage in the same manner as an opposite-sex New York marriage, under the principle of comity."

precedent to receipt of benefits by such partners;
. . .

"WHEREAS, Section 110.11 of the Laws of West-chester County places the responsibility to supervise, direct and control, subject to law, the administrative services and departments of the County upon the County Executive; . . .

"NOW, THEREFORE, I, ANDREW J. SPANO, County Executive of the County of Westchester, in light of the aforementioned and in accordance with my statutory duties, do hereby order and direct each and every department, board, agency, and commission of the County of Westchester under my jurisdiction to recognize same sex marriages lawfully entered into outside the State of New York in the same manner as they currently recognize opposite sex marriages for the purposes of extending and administering all rights and benefits belonging to these couples, to the maximum extent allowed by law." (Westchester County Executive Order No. 3 of 2006.)

In September 2006, defendant Nancy G. Groenwegen, President of the New York State Civil Service Commission and Commissioner of the New York State Department of Civil Service, issued an Employee Benefits Division Policy Memorandum on "[r]ecognition of the spousal relationship in marriages between partners of the same sex conducted in jurisdictions where they may be legally performed," effective May 1, 2007. The memorandum explained that the State had provided eligibility for employee benefits, including New York State Health Insurance Program benefits, to the domestic partners of state employees, including same-sex partners, since the mid-1990s. The coverage, while mandatory for the State itself, was discretionary for Participating Agencies (PAs) and Participating Employers (PEs). As a result, the State had been sued by an employee of a school district that had opted not to extend health insurance coverage to domestic partners (see *Funderburke v New York State Dept. of Civ. Serv.*, 13 Misc 3d 284 [Sup Ct, Nassau County 2006], *vacated* 49 AD3d 809 [2d Dept 2008]). The Department of Civil Service then

"determined that for purposes of benefits eligibility under NYSHIP and all other benefit plans

administered by its Employee Benefits Division, it would recognize as spouses partners in same sex marriages legally performed in other jurisdictions. . . .

"Effective May 1, 2007, the Department of Civil Service recognizes, as spouses, the parties to any same sex marriage performed in jurisdictions where that marriage is legal. This policy applies to all health benefit plans provided under NYSHIP, including the Empire Plan, the Student Employees Health Plan and HMOs, and all other benefits administered by the Employee Benefits Division, including The New York State Dental and Vision Plans, the M/C Life Insurance Program and NYPERL. Recognition of these spouses is mandatory for the State and all other entities participating in NYSHIP, including all PAs and PEs." (Employee Benefits Division Policy Memorandum No. 129r1.)

## II.

In September 2006, plaintiffs Margaret Godfrey, Rosemarie Jarosz and Joseph Rossini, residents of and taxpayers in Westchester County, commenced an action against County Executive Andrew J. Spano, alleging two causes of action. In their first cause of action, brought pursuant to General Municipal Law § 51, plaintiffs claim that, by issuing Executive Order No. 3, Spano illegally legislated in the areas of marriage and domestic relations in a manner inconsistent with the New York State Constitution and state law. In their second cause of action, plaintiffs allege that Spano violated New York State Constitution, article IX, § 2 (c) and Municipal Home Rule Law § 10 (1) (i). Plaintiffs seek a declaratory judgment that Executive Order No. 3 is "illegal, *ultra vires*, unconstitutional and otherwise null and void" and a permanent injunction preventing the implementation or effectuation of the Executive Order.

Michael Sabatino and Robert Voorheis, a same-sex couple who married in Canada, were permitted to intervene.[4] Spano and the intervenors moved to dismiss plaintiffs' complaint under CPLR 3211 (a) (7).

Supreme Court granted the motions to dismiss and declared that Executive Order No. 3 is "a valid exercise of the County

---

4. Subsequently, the State Comptroller was permitted to intervene.

Executive's power, not an illegal act, and does not violate the State Constitution or the Municipal Home Rule Law" (15 Misc 3d 809, 818 [2007]). Plaintiffs appealed, and the Appellate Division, Second Department, unanimously affirmed (57 AD3d 941 [2008]).

In regard to the *Godfrey* plaintiffs' first cause of action, the Appellate Division held that the Executive Order was not illegal, because it "requires that same-sex marriages be recognized to 'the maximum extent allowed by law.' By its terms, therefore, the Executive Order can never require recognition of such a marriage where it would be outside the law to do so." (*Id.* at 942-943.) In regard to the second cause of action, the court held that plaintiffs had failed to demonstrate the required "personal interest in the dispute beyond that of any taxpayer" (*id.* at 943), so that they lacked standing.

In the other case before us, plaintiffs Kenneth J. Lewis, Denise A. Lewis, Robert C. Houck, Jr., and Elaine A. Houck, New York State taxpayers represented by the same Alliance Defense Fund representing the plaintiffs in the case against Spano, commenced an action against the New York State Department of Civil Service and its Commissioner, Nancy G. Groenwegen, in May 2007. The *Lewis* plaintiffs allege that defendants violated State Finance Law § 123-b (first cause of action), the separation of powers doctrine (second cause of action), New York State Constitution, article VII, § 8 (third cause of action), and State Administrative Procedure Act § 202 and New York State Constitution, article IV, § 8 (fourth cause of action). Plaintiffs seek a declaratory judgment that defendants' recognition of out-of-state same-sex marriages "is illegal, unconstitutional, *ultra vires*, void and constitutes an illegal expenditure of State funds" and a permanent injunction directing defendants to cease and desist from recognizing out-of-state same-sex marriages.

Peri Rainbow and Tamela Sloan, a same-sex couple who married in Canada, were permitted to intervene. Defendants and intervenors moved to dismiss plaintiffs' complaint under CPLR 3211 (a) (7). Plaintiffs cross-moved for summary judgment.

Supreme Court denied the *Lewis* plaintiffs' cross motion for summary judgment, searched the record and granted summary judgment to defendants, and declared that "[t]he policy memorandum issued by the New York State Department of Civil Service Employee Benefits Division in which it recognized, as spouses, the parties to any same sex marriage, performed in

jurisdictions where such marriage is legal, is both lawful and within its authority" (NYLJ, Mar. 18, 2008, col 1, 2008 NY Misc LEXIS 1623, *7). The court relied on *Martinez v County of Monroe* (50 AD3d 189 [2008], *lv dismissed* 10 NY3d 856 [2008]), a decision of the Appellate Division, Fourth Department, holding that a Canadian same-sex marriage was entitled to recognition in New York under the common-law marriage recognition rule.

The Appellate Division, Third Department, affirmed Supreme Court's order in a divided opinion (60 AD3d 216 [2009]). The Appellate Division majority concluded that the common-law marriage recognition rule warranted dismissal of plaintiffs' first cause of action alleging an unlawful disbursement of public funds (*id.* at 222-223). In regard to plaintiffs' second cause of action, alleging violation of the separation of powers doctrine, the Appellate Division held that defendants' "recognition of same-sex spouses falls squarely within the scope of the policy expressed in Civil Service Law §§ 161 and 164 to provide benefits to the spouses and dependent children of state employees" (*id.* at 223). The majority further rejected plaintiffs' claim that the Department of Civil Service violated New York Constitution, article VII, § 8 (1) by using public funds to fund the private agendas of individuals and organizations seeking marriage equality in New York. "Inasmuch as the Department's policy furthers a valid governmental purpose to benefit public employees, it cannot fairly be said that it is invalid as promoting a private undertaking" (*id.* at 224). Finally, the court held that "the determination to recognize same-sex marriages is not invalid for the Department's failure to comply with the formal rule-making procedures of the State Administrative Procedure Act because the determination is an interpretative statement that is merely explanatory" (*id.*).

Two Justices wrote a separate concurring opinion. They would have affirmed Supreme Court's order on a narrower ground, pointing out that "[t]he Legislature has vested the President of the Civil Service Commission with broad discretion in defining, for purposes of health insurance coverage for state employees, the terms spouse and dependent children" (*id.* at 224 [Lahtinen and Malone, Jr., JJ., concurring]).

We granted plaintiffs in both cases leave to appeal (12 NY3d 705 [2009]), and we now affirm both Appellate Division orders.

## III.

The *Godfrey* plaintiffs have abandoned their second cause of action, containing allegations against Spano based on New York State Constitution, article IX, § 2 (c) and Municipal Home Rule Law § 10 (1) (i) (*see* brief of plaintiffs-appellants Margaret Godfrey et al., at 3). They rest their case on the claim, made pursuant to General Municipal Law § 51, that Spano illegally legislated in the areas of marriage and domestic relations.

A taxpayer suit under General Municipal Law § 51 "lies only when the acts complained of are fraudulent, or a waste of public property in the sense that they represent a use of public property or funds for entirely illegal purposes" (*Mesivta of Forest Hills Inst. v City of New York*, 58 NY2d 1014, 1016 [1983] [internal quotation marks omitted], quoting *Kaskel v Impellitteri*, 306 NY 73, 79 [1953]). Because plaintiffs allege no fraud, their action succeeds only if they state a claim for illegal dissipation of municipal funds. Plaintiffs' amended complaint contains the allegation that Executive Order No. 3 "has resulted and will continue to result in the illegal disbursement of County funds" by providing County-funded benefits to couples in same-sex marriages. Although on a motion to dismiss plaintiffs' allegations are presumed to be true and accorded every favorable inference, conclusory allegations—claims consisting of bare legal conclusions with no factual specificity—are insufficient to survive a motion to dismiss (*Caniglia v Chicago Tribune-N.Y. News Syndicate*, 204 AD2d 233, 233-234 [1st Dept 1994]). Here, plaintiffs have not identified any specific impact that the Executive Order has had on any public employee or private individual in Westchester County. Even assuming the allegations in the *Godfrey* complaint to be true, plaintiffs fail to specify a circumstance where taxpayer funds were expended as a result of the Executive Order that would not have been expended in the absence of the order. We find this lack of specificity fatal to plaintiffs' cause of action.

In support of his motion to dismiss, Executive Spano submitted an affidavit of the Commissioner of Finance for Westchester County, dated November 17, 2006. The Commissioner stated that he could think of "no instance where the County has expended funds or extended benefits in connection with [the] Executive Order." That statement is unsurprising in that Westchester County already insured same-sex domestic partners and dependents of county employees before the Executive Order was issued, requiring only that applicants for domestic partner

coverage have lived with their domestic partners in a committed financially interdependent relationship for at least a year. Indeed the Executive Order begins by acknowledging that "the County of Westchester has long provided health benefits to the qualifying domestic partners of its members." Although the affidavit does not in itself warrant dismissal under CPLR 3211, because it does not establish conclusively that plaintiffs have no cause of action (*see Lawrence v Graubard Miller*, 11 NY3d 588, 595 [2008]; *Rovello v Orofino Realty Co.*, 40 NY2d 633, 635-636 [1976]), it supports our judgment that the conclusory nature of plaintiffs' allegations is more than a matter of inartful pleading.

We do not adopt the Second Department's rationale for affirmance—that the Executive Order did not purport to change the law, because it included language directing recognition of same-sex couples "to the maximum extent allowed by law." We find such language, which may appear either expansive or restrictive depending on the reader, ambiguous, and we would not encourage executive officials to try to insulate their orders from judicial review by this means. Nevertheless, because the *Godfrey* plaintiffs have failed to allege an unlawful expenditure of taxpayer funds, they have not stated a cognizable claim under General Municipal Law § 51. Consequently, we affirm the order of the Appellate Division, dismissing the *Godfrey* plaintiffs' complaint.

## IV.

In the other matter, the *Lewis* plaintiffs have abandoned their third and fourth causes of action, containing claims based on New York State Constitution, article VII, § 8, State Administrative Procedure Act § 202, and New York State Constitution, article IV, § 8 (*see* brief of plaintiffs-appellants Kenneth J. Lewis et al., at 3). The surviving claims invoke State Finance Law § 123-b and the separation of powers doctrine.

With respect to State Finance Law § 123-b, plaintiffs make conclusory allegations that defendants "are expending and will expend State funds and/or resources supplied from New York State tax revenue," without claiming specific expenditures that would not otherwise have been incurred. While a taxpayer may bring suit under this statute to prevent the unlawful expenditure of state funds "whether or not such person is or may be affected or specially aggrieved" (State Finance Law § 123-b [1]), there must be some specific threat of an imminent expenditure. "[C]ourts have been inhospitable to plaintiffs who seek

essentially to challenge nonfiscal activities by invoking the convenient statutory hook of section 123-b" (*Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 813 [2003]). We note that the Department of Civil Service has offered New York State Health Insurance Program benefits to domestic partners since the mid-1990s. The State Finance Law claim of the *Lewis* plaintiffs fails to state a cause of action for the same reason that the General Municipal Law § 51 claim of the *Godfrey* plaintiffs fails.

■ Plaintiffs' remaining cause of action, which alludes to the separation of powers doctrine, boils down to the claim that defendants acted "inconsistently with the Legislature's pronouncements on spousal benefits." Specifically, plaintiffs allege that defendants acted in violation of Civil Service Law § 164. The statute itself refutes plaintiffs' claim.

Under Civil Service Law § 161 (1), the President of the Civil Service Commission is "authorized and directed to establish a health insurance plan for state officers and employees and their dependents." Civil Service Law § 164 (1) provides that every state employee "shall be entitled to have his spouse and dependent children, *as defined by the regulations of the president*, included in the coverage upon agreeing to pay his contribution, if any, to the cost of such coverage for such dependents" (emphasis added). The statute thus expressly gives the President of the Civil Service Commission the authority to define "spouse." Moreover, the statute does not restrict the President's provision of health insurance to spouses and dependent children. The language is of entitlement, not restriction.

Furthermore, the legislative history supports the view that the President of the Civil Service Commission was deliberately given broad discretion to define who will qualify for coverage. Governor Harriman, commenting on the 1956 legislation that created the New York State Health Insurance Program, noted that "[i]t would not be practical to specify in legislation the precise type of coverage to be provided under a comprehensive health insurance plan. The law must make it possible for the best plan to be worked out in consultation with representatives of the employees affected." (Governor's Message to the Legislature, Feb. 16, 1956, 1956 NY Legis Ann, at 419.) The Director of the Division of Personnel Services of the Department of Civil Service at that time, Edward D. Meacham, testified before the Joint Legislative Committee on Health Insurance Plans that

"[d]etailed requirements as to eligibility for participation in the plan both as to employees and retirees are difficult to spell out in legislation. Such requirements might well be left to the determination of the administering agency within the general framework of the legislature. . . .

"The extent to which the plan should go in providing such dependency benefits should be left for determination in negotiating the contract. There are circumstances under which it would be desirable to provide coverage for dependents other than the employee's spouse and dependent children . . . [T]he advantages and disadvantages would have to be carefully weighed by those participating in the plan before a final determination is met." (Testimony of Edward D. Meacham, Feb. 22, 1956, Before the Joint Legislative Committee on Health Insurance Plans, 1956 NY Legis Doc No. 64, at 73-74.)

It is clear, therefore, both from the plain language of the statute and from the legislative history, that the Legislature intended to give the Department of Civil Service—guided of course by the collective bargaining process[5]—complete discretion to determine the limits of dependent coverage, provided that, at a minimum, spouses and dependent children were covered. There is no conflict between the Civil Service Law and the challenged Policy Memorandum issued by the Commissioner of the New York State Department of Civil Service. In sum, as the concurring Justices on the Third Department noted,

"[t]he practical effect of the determination here is to give an out-of-state document formalizing a same-sex relationship the same weight as the affidavit required to receive such benefits as a domestic partner, which is a narrow accommodation to state employees in an area where the Legislature has specifically accorded the Commission broad discretion" (60 AD3d at 224-225 [Lahtinen and Malone, Jr., JJ., concurring]).

We thus affirm the order of the Appellate Division, dismissing the *Lewis* complaint.

---

5. The Department of Civil Service is obliged to implement terms of coverage reached in a collective bargaining agreement with a public employee union (Civil Service Law § 161-a [1]).

## V.

Because we can decide the cases before us on narrower grounds, we find it unnecessary to reach defendants' argument that New York's common-law marriage recognition rule is a proper basis for the challenged recognition of out-of-state same-sex marriages. We end by repeating what we said in *Hernandez v Robles*, expressing our hope that the Legislature will address this controversy; that it "will listen and decide as wisely as it can; and that those unhappy with the result—as many undoubtedly will be—will respect it as people in a democratic state should respect choices democratically made" (7 NY3d at 366).

Accordingly, in each case the order of the Appellate Division should be affirmed with costs.

CIPARICK, J. (concurring). Although I agree with the result reached by the majority, I write separately to set forth my view that the orders under review should be affirmed on the ground that same-sex marriages, valid where performed, are entitled to full legal recognition in New York under our State's long-standing marriage recognition rule. The issue is squarely presented in these appeals and plaintiffs' standing allegations are sufficient to allow us to reach it. The effect of the majority's rationale in affirming these orders will be to permit an unworkable pattern of conflicting executive and administrative directives promulgated pursuant to the individual discretion of each agency head. We ought to avoid the confusion that would arise from a same-sex couple being considered legally married by one agency for one purpose but not married by another agency for a different purpose.

As the majority recognizes, we determined in *Hernandez v Robles* (7 NY3d 338 [2006]) that, currently, under the Domestic Relations Law, same-sex marriages may not lawfully be entered into in New York, and our State's Constitution does not compel the recognition of same-sex marriages performed within the state. However, as the majority also notes, *Hernandez* did not address the issue whether New York law recognizes same-sex marriages validly performed in other jurisdictions. Several jurisdictions that border our state currently perform or will soon perform same-sex marriages, including Massachusetts (*see Goodridge v Department of Pub. Health*, 440 Mass 309, 798 NE2d 941 [2003]; Mass Acts 2008, ch 216, § 1 [repealing statute that voided marriages between nonresidents contrary to the law of the state of residence]), Connecticut (*see Kerrigan v*

*Commissioner of Pub. Health*, 289 Conn 135, 957 A2d 407 [2008]), Vermont (*see* 15 Vt Stat Ann § 8 [''(m)arriage is the legally recognized union of two people'']) and Canada (*see* Civil Marriage Act, SC 2005, ch 33).

Principles of comity have given rise to New York's well-settled marriage recognition rule, which ''recognizes as valid a marriage considered valid in the place where celebrated'' (*Van Voorhis v Brintnall*, 86 NY 18, 25 [1881]; *see also Matter of May*, 305 NY 486, 490 [1953]). Indeed, through our marriage recognition rule, we have recognized out-of-state marriages, valid where contracted, despite that the parties' intent in entering the marital contract elsewhere was to evade New York laws proscribing their marriage from being performed here (*see Thorp v Thorp*, 90 NY 602, 605-606 [1882]; *Van Voorhis v Brintnall*, 86 NY at 32-33; *see also Fisher v Fisher*, 250 NY 313, 318 [1929]; *Shea v Shea*, 268 App Div 677, 687-688 [2d Dept 1945, Johnston, J., dissenting in part], *revd on dissenting op of Johnston, J.*, 294 NY 909 [1945] [recognizing as valid an Illinois common-law marriage]). For example, in *Matter of Mott v Duncan Petroleum Trans.* (51 NY2d 289 [1980]), we recognized and gave effect to a common-law marriage contracted in the state of Georgia, despite the fact that New York does not recognize common-law marriages (*id.* at 291; Domestic Relations Law § 11). Although the spouses in *Mott* were domiciliaries of New York, they had vacationed for weeks at a time in Georgia, representing themselves there as husband and wife, sufficient to create a common-law marriage in that state (51 NY2d at 291-294). Similarly, in *Matter of May*, we recognized as valid a marriage performed in Rhode Island between a man and his niece, both residents of New York (*see* 305 NY at 493). Although New York law prohibits such a marriage as incestuous (Domestic Relations Law § 5), Rhode Island law at the time permitted marriage among blood relatives '' 'solemnized among the Jews, within the degrees of affinity or consanguinity allowed by their religion' '' (*id.* at 492, quoting RI Gen Laws, tit XXIV, ch 243, § 4).

Two exceptions to the marriage recognition rule have evolved (*see Matter of May*, 305 NY at 490). The first excepts from recognition out-of-state marriages where a New York statute clearly expresses ''the Legislature's intent to regulate within this State marriages of its domiciliaries solemnized abroad'' (*id.* 493). In other words, for this ''positive law'' exception to apply, a statute must expressly convey a legislative intent to void a marriage

legally entered into in another jurisdiction (*see Van Voorhis*, 86 NY at 34-35).

Our Legislature has not expressly prohibited the recognition of same-sex marriages performed in other jurisdictions. Although the federal Defense of Marriage Act (DOMA) authorizes the states to pass so-called "mini-DOMAs"—and many states have done so (*see e.g.* Ga Code Ann § 19-3-3.1 [b] [declaring void" (a)ny marriage entered into by persons of the same sex pursuant to a marriage license issued by another state or foreign jurisdiction"])—New York has not, and the Legislature has enacted no other law expressly forbidding the recognition of same-sex marriages performed in other jurisdictions or expressing any legislative intent that such marriages be voided.[1] Thus, the positive law exception to recognizing out-of-state same-sex marriages does not apply.

The second exception, which is narrowly applied and is sometimes called the "natural law" exception to the marriage recognition rule, denies recognition to out-of-state marriages abhorrent to New York public policy. The natural law exception has been invoked exceedingly rarely, only in cases involving incest or polygamy (*see Van Voorhis*, 86 NY at 26, citing *Wightman v Wightman*, 4 Johns Ch 343 [Ch Ct 1820] and *Hutchins v Kimmell*, 31 Mich 126 [1875]). We noted, in the closely related context of foreign divorce decrees, that "in a world of different people, [n]ations and diverse views and policies," the public policy exception to the appropriate exercise of comity is applied rarely (*Matter of Gotlib v Ratsutsky*, 83 NY2d 696, 700 [1994]), and the application of the exception must be predicated upon a demonstration of "proximately related public policies fundamentally offensive and inimical to those of this State" (*id.*). "This high burden springs from an ordered sense of respect and tolerance for the adjudications of foreign Nations, [and the] parallel[ respect] . . . commanded among the States by the Full Faith and Credit Clause of the United States Constitution" (*id.*,

---

1. Indeed, as the state respondents note, a bill to adopt a mini-DOMA has been introduced at every legislative session since 1998, but not one has been reported out of committee. Bills introduced to authorize the performance of same-sex marriages, on the other hand, have twice passed in the Assembly (*see* 2009 NY Assembly Bill A7732 [delivered to Senate May 12, 2009], 2007 NY Assembly Bill A8590 [delivered to Senate June 19, 2007]).

citing US Const, art IV, § 1).[2] Notably, for example, in *Matter of May*, where we recognized as valid the marriage performed in Rhode Island between a man and his niece that could not have lawfully been entered into in New York given that, by statute, it was deemed incestuous, we nevertheless explained that the "marriage, solemnized, as it was . . . was not offensive to the public sense of morality to a degree regarded generally with abhorrence and thus was not within the inhibitions of natural law" (305 NY at 493). Accordingly, the marriage did not fall within the natural law exception to the marriage recognition rule.

The "natural law" or public policy exception to the marriage recognition rule is inapplicable to same-sex marriages solemnized in our sister states or other foreign jurisdictions. The public policy of the State is deduced from the constitutional, statutory and decisional law, as well as from "prevailing social and moral attitudes of the community" (*Intercontinental Hotels Corp. [Puerto Rico] v Golden*, 15 NY2d 9, 14 [1964]). Today,[3] the laws of New York protect committed same-sex couples in a myriad of ways. For example, Executive Law § 354-b permits same-sex domestic partners of military members killed in combat to receive supplemental burial allowances; Public Health Law § 2805-q (1) provides that "[n]o domestic partner shall be denied any rights of visitation of his or her domestic partner when such rights are accorded to spouses and next-of-kin at any hospital, nursing home or health care facility"; and Public Health Law § 4201 (1) (c) and (2) (a) (ii-a) permits a same-sex domestic partner to elect how to dispose of his or her partner's remains. Many counties and municipalities have likewise adopted ordinances and resolutions extending recognition to same-sex couples and granting benefits accordingly.

In addition to statutory law, New York decisional law recognizes same-sex life partners as family members, such that the surviving partner can challenge an eviction proceeding (*see*

---

**2.** The federal Defense of Marriage Act provides, in effect, that the Full Faith and Credit Clause will not operate to *require* recognition of same-sex marriages performed in other states (*see* 28 USC § 1738C). DOMA does not in any way diminish the principles of comity or the basis therefor.

**3.** The time period most relevant to determining this State's public policy is the present; our evolving standards of acceptance, rather than prior concepts of morality, are of the greatest concern (*see e.g. Intercontinental Hotels Corp. [Puerto Rico] v Golden*, 15 NY2d 9, 15 [1964] [examining the "trend in New York State" which demonstrated an increasing "acceptance of *licensed* gambling transactions as a morally acceptable activity"]).

*Braschi v Stahl Assoc. Co.*, 74 NY2d 201, 211-214 [1989]). We have also permitted same-sex partners to challenge their exclusion from housing set aside for married couples on disparate impact grounds (*see Levin v Yeshiva Univ.*, 96 NY2d 484, 494-495 [2001]). Moreover, the same-sex partner of a biological parent can, through adoption, become a parent of the child (*see Matter of Jacob*, 86 NY2d 651, 669 [1995]). These judicial decisions and statutes express a public policy of acceptance that is simply not compatible with plaintiffs' argument that the recognition in our state of same-sex marriages validly performed elsewhere is contrary to New York public policy.

In these related matters, the Westchester County Executive ordered that all county employees, boards and agencies should "recognize same sex marriages lawfully entered into outside the State of New York . . . for the purposes of extending and administering all rights and benefits belonging to these couples, to the maximum extent allowed by law." (Westchester County Executive Order No. 3 of 2006.) The Department of Civil Service issued a policy memorandum announcing that the Department would recognize, as spouses, the parties to any same-sex marriage performed in jurisdictions where such marriage is legal. The challenges to these actions fall squarely within the purview of the marriage recognition rule and, because neither of the exceptions to that rule apply, I concur in the affirmance of the Appellate Division orders.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge CIPARICK concurs in result in a separate opinion in which Chief Judge LIPPMAN and Judge JONES concur.

In each case: Order affirmed, with costs.