DTI-DSIC, LLC v 930-DSIC, LLC
2026 NY Slip Op 03919
June 23, 2026
Appellate Division, First Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

DTI-DSIC, LLC, Respondent-Appellant,
v
930-DSIC, LLC, et al., Appellants-Respondents.

Decided and Entered: June 23, 2026
Index No. 650762/25|Appeal No. 6950|Case No. 2025-05825|
Before: Renwick, P.J., Scarpulla, González, Rodriguez, O'Neill Levy, JJ.

Skadden, Arps, Slate, Meagher & Flom LLP, New York (Michael C. Griffin of counsel), for appellants-respondents.
Cole Schotz P.C., New York (Arielle H. Wasserman of counsel), for respondent-appellant.

[*1]
Order, Supreme Court, New York County (Melissa A. Crane, J.), entered August 15, 2025, which, to the extent appealed from as limited by the briefs, denied defendants' motion insofar as it sought to dismiss plaintiff's claims for breach of contract, breach of fiduciary duty, and accounting, unanimously modified, on the law, to the extent of granting the motion insofar as it sought to dismiss the breach of contract cause of action as against defendant 930-DSIC Partner, LLC (the Managing Member) and the breach of fiduciary duty cause of action, and otherwise affirmed, without costs.
Plaintiff is a Missouri LLC that invested $1.85 million in defendant 930-DSIC Company (Company), a Delaware LLC, in exchange for an 11.22% membership interest. Managing Member is the sole managing member of the Company. The parties' relationship is governed by the Company's Amended and Restated Operating Agreement (operating agreement), which in turn is governed by Delaware law.
On May 12, 2014, Managing Member sent plaintiff a notice of default, stating that plaintiff was "in default of its obligations to make Capital Contributions in respect of certain Management Fees and Administrative Expenses" totaling $41,927. The notice further stated that plaintiff was a "Defaulting Member" under Section 4.2(a) of the operating agreement and that "[t]he Company and the Managing Member . . . reserve all of the rights and remedies that [they] have under the [Operating] Agreement and/or applicable law," including to require the sale of plaintiff's interest.
On July 20, 2021, the Company sent plaintiff a letter informing it that a portion of its interest was sold via a tender offer. According to the letter, some of the 2021 sale proceeds were used to pay part of plaintiff's overdue management fees and expenses and the remainder was placed in escrow. On January 18, 2024, Managing Member informed plaintiff that, pursuant to section 4.2 of the Operating Agreement, it was forcing a sale of plaintiff's remaining membership interest. In exchange, Managing Member issued plaintiff a non-recourse promissory note. In the accompanying membership interest transfer instrument, Managing Member stated that it had determined that the sale price for plaintiff's entire interest would be $1,677,382.95, "which represents (a) a fair and reasonable price for [plaintiff's] interest . . . as determined by the Managing Member in good faith, less (b) the Managing Member's legal expenses associated with [plaintiff's] Default (including the costs of effectuating the Required Sale)."
Plaintiff commenced this action seeking to hold defendants liable for forcing the two sales of its membership interest in the Company. Plaintiff alleges that defendants took improper deductions from the sale proceeds and has wrongfully withheld the proceeds from plaintiff.
[*2]
Supreme Court should have granted defendants' motion to dismiss plaintiff's breach of contract claim as to the Managing Member because plaintiff did not allege that any conduct by the Managing Member violated the parties' operating agreement. The record demonstrates that plaintiff was in default, and that the Managing Member had the discretion under the operating agreement to force the sale of defaulting members' interests, to determine the purchase price in a forced sale, and to determine the time and the size of any disbursement of the proceeds to the defaulting member. Further, the operating agreement provided that the Managing Member could not be held liable for matters left to its discretion unless it exercised its powers in bad faith. Plaintiff failed to allege that the Managing Member knew that its conduct contravened the terms of the operating agreement, and therefore did not plead that it exercised its contractual authority in bad faith (see Construction Indus. Laborers Pension Fund v Bingle, 2022 WL 4102492, *9, 2022 Del Ch LEXIS 223, *24 [Del Ch Sept. 6, 2022, C.A. No. 2021-0940-SG] ["intent" is an element of bad faith]; see also Glaxo Group Ltd. v DRIT LP, 248 A3d 911, 916 [Del 2021]). In addition, plaintiff makes only conclusory allegations that defendants "scheme[d] to defraud innocent investors" (see Godfrey v Spano, 13 NY3d 358, 373 [2009]).
For similar reasons, Supreme Court should have dismissed the cause of action for breach of fiduciary duty. The Managing Member exercised its contractual right to determine the price of any forced sale and the timing of any payment of the proceeds. The exercise of a contractual right cannot form the basis of a cause of action for breach of fiduciary duty (see Nemec v Shrader, 991 A2d 1120, 1129 [Del 2010]).
Plaintiff stated a cause of action for breach of contract as against the Company by alleging that the Company made improper deductions from the proceeds of the forced sales. Although the operating agreement gave the Company "the right to set-off any or all amounts owing by a Defaulting Member to the Company against all distributions and other amounts from time to time payable by the Company," the agreement did not vest the Company with the same discretion it afforded to the Managing Member. Instead, the operating agreement allowed the Company to reduce disbursements to defaulting members only by the amounts owed by the defaulting member. Through its allegations that the Company improperly reduced the sales proceeds, plaintiff sufficiently alleged that the Company breached the operating agreement.
[*3]
Finally, plaintiff sufficiently pleaded a cause of action for an accounting by alleging that it demanded an accounting concerning the forced sales proceeds, but that the Managing Member refused to provide it (see Nero v Littleton, 1998 WL 229526, *4, 1998 Del Ch LEXIS 57, *14 [Del Ch Apr. 30, 1998, Civil Action No. 1622]). The Managing Member remains a fiduciary to plaintiff even though the operating agreement modified its fiduciary duties (see Gelfman v Weeden Invs., L.P., 792 A2d 977, 986-987 [Del Ch 2001]; see also William Pen Partnership v Saliba, 13 A3d 749, 756 [Del 2011] [elimination of a fiduciary duty must be express and unambiguous]). Moreover, the accounting cause of action is not duplicative of the breach of contract cause of action because the two causes of action seek different remedies.
We have considered plaintiff's remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 23, 2026