Holder v Watson (2025 NY Slip Op 50726(U))

[*1]

Holder v Watson

2025 NY Slip Op 50726(U)

Decided on May 2, 2025

Supreme Court, New York County

Crawford, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 2, 2025
Supreme Court, New York County

Trelan Holder, Alicia Howard, Plaintiffs,

against
Michael Watson as Executor of the Estate of Darline C. Jones, Defendant.

Index No. 153977/2024

 
Ashlee Crawford, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 13-17, 20-23, 26, 28 were read on this motion to/for DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 002) 24-25, 27, 29-32 were read on this motion to/for DISMISS.
Upon the foregoing documents, and due deliberation, the Court holds as follows:
Defendant Michael Watson, as Executor of the Estate of Darlene Jones, moves under motion seq. 002 to dismiss the amended complaint. Defendant's motion to dismiss the original complaint (seq. 001) is withdrawn (NYSCEF Doc. 23). Dismissal of the amended complaint is denied for the reasons that follow.
Purchase and Sale Agreement
Decedent Darlene Jones, as seller, and plaintiffs Treland Holder and Alicia Howard, as purchasers, entered into a contract of sale dated July 13, 2022, for the purchase and sale of real property at 353 Convent Avenue, New York, New York (Block 2059, Lot 50)(NYSCEF Doc. [*2]No. 19 [Contract of Sale]). The contract provides for a closing date of "on or about forty-five (45) days" from delivery of the fully executed contract (id. at ¶ 15). 
Section 16(e) of the contract provides that plaintiffs' obligation to purchase the premises is subject to the following condition precedent:
All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems [ . . . ], equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing. Roof shall be free of leaks [Contract of Sale at ¶ 16(e); see also Second Rider at ¶ 6 (roof and basement is free from leaks)].
Seller agreed to perform regular care and maintenance of the premises from the date of the contract through the date that seller would tender possession of the premises to plaintiffs (Contract of Sale at Second Rider ¶ 7). Seller further represented that "[t]he windows, ceilings, walls and floors of the [premises] for the past twelve months have been, are presently, and at the time of closing shall be, free from seepage or leaks" (id. at ¶ 17[c]). 
Plaintiffs agreed to purchase the property in an "as is" condition following their inspection and investigation, with the conditions precedent set forth in section 16(e) carved out (Contract of Sale at ¶ 12; see also id. at Rider ¶ 4). Further, plaintiffs' obligation to complete the purchase was made contingent on the sale of their current residence (id. at Rider ¶ 21). 
Paragraph 23 of the contract, entitled "Defaults and Remedies," provides that
(a) If Purchaser willfully defaults hereunder, Seller's sole remedy shall be to receive and retain the Down payment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Down payment constitutes a fair and reasonable number of damages under the circumstances and is not a penalty.
(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance [Contract of Sale at ¶ 23].
The contract of sale contains a merger clause reflecting the parties' agreement that the contract may not be "waived, changed or cancelled except in writing" (Contract of Sale at 28[a]-[b]; see also Rider ¶ 6).
Amended Complaint
Plaintiffs allege that, unbeknownst to them, decedent-seller Jones passed away in December 2022, about five months after the contract was executed. Defendant allegedly concealed Ms. Jones' death from plaintiffs and, throughout 2023, was unresponsive to plaintiffs' requests to execute closing documents. Plaintiffs allege that seller's broker finally disclosed decedent's death to them in February 2024 (Am. Compl. at 26-30). In the interim, plaintiffs had contracted to sell their current apartment, with a closing scheduled for February 26, 2024, of which defendants were aware (id. at 31-33).
In January 2024, during a bank appraisal of the property, plaintiffs' broker observed water damage to the wooden kitchen floors. In response to this discovery, seller's agent [*3]disclosed for the first time that a water pipe had failed, damaging the kitchen floors. Then, during plaintiffs' walk-through of the property on February 10, 2024, they discovered water damage and microbial growth in the kitchen, bathroom, and basement; the microbial growth was later confirmed in a February 20, 2024 mold remediation report obtained by seller (Am. Compl. at 35-40). After this point, seller allegedly denied plaintiffs access to the property for inspection purposes; insisted that plaintiffs accept the property "as is"; and refused to pay for further repairs or remediation (id. at 43-48). Plaintiffs allege that without access to the property, they were unable to confirm clean title and to close on the sale. Further, due to the uncertainty surrounding the closing of the property, plaintiffs contend that they had to release from contract the purchasers of their current apartment (id. at 49-51). 
Plaintiffs allege that defendant failed to perform routine care and maintenance of the property, allowing it to fall into disrepair and suffer water leaks and mold, among other issues. Plaintiffs contend that they have remained ready, willing, and able to close, but cannot do so until the foregoing issues are resolved (Am. Compl. ¶¶ 53-64). 
In the amended complaint, plaintiffs assert a claim for breach of contract/specific performance based on defendant's alleged failure to maintain the property and to address water leaks and faulty mechanical systems and appliances (first cause of action). Alternative to specific performance, plaintiffs seek a credit at closing to compensate them for the cost of repairing and resolving the foregoing issues (second cause of action). Under the third cause of action, plaintiffs seek compensation for damages occasioned by their inability to close on the sale of their apartment, due to defendant's failure to perform under the contract of sale (third cause of action). Plaintiffs have filed a notice of pendency against the property (NYSCEF Doc. 4).
Motion to Dismiss
Defendant moves to dismiss the amended complaint pursuant to CPLR 3211(a)(1) and (a)(7), on the ground that the contract's failure to provide a date for the closing of the sale violates the rule against perpetuities, rendering the contract invalid as a matter of law (Memo of Law in Supp at 5, citing Symphony Space v Pergola, 88 NY2d 466 [1996]). Specifically, defendant contends that plaintiffs are not obliged under the contract of sale to sell their apartment by a specific date, or to use their best efforts to effectuate such a sale, and the contract does not provide that time is of the essence.
Defendant further argues that plaintiffs are not entitled to specific performance because they have abandoned the contract and are not ready, willing, and able to close; and breached the implied covenant of good faith and fair dealing, and have unclean hands, by failing to sell their apartment for two years since execution of the contract. Defendant seeks vacatur of the notice of pendency and to retain plaintiffs' $80,000.00 deposit, with 9% interest from the date of the breach.
In opposition, plaintiffs contend that the contract does not violate the rule against perpetuities. They argue that a property sale contingency provision is common in residential sale contracts, and that defendants have not rebutted the statutory "savings clause" found in section 9-1.3(d) of the Estates Powers & Trusts Law (EPTL), which provides that such contingency is presumed to occur within 21 years from the date of the contract (Memo of Law in Opp at 2-3; see EPTL 9-1.3[d]). Plaintiffs assert that defendants' remaining arguments are dependent on facts outside of the amended complaint and, therefore, cannot support a pre-answer motion to dismiss.
Discussion
On a motion to dismiss pursuant to CPLR § 3211, the pleading is to be afforded a liberal construction, the facts as alleged in the complaint are deemed to be true, and the plaintiff is accorded the benefit of every possible favorable inference (Leon v Martinez, 84 NY2d 83, 87 [1994]). Allegations consisting of bare legal conclusions with no factual specificity are insufficient to survive a motion to dismiss (Godfrey v Spano, 13 NY3d 358, 373 [2009]). 
Under CPLR 3211(a)(1), a dismissal is warranted only if the documentary evidence conclusively establishes a defense to the asserted claims as a matter of law" (Leon v Martinez, 84 NY2d at 88; see also Goshen v Mutual Life Ins. Co. of New York, 98 NY2d 314, 326 [2002]). "In assessing a motion under CPLR 3211(a)(7), however, a court may freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint" (Leon v Martinez, 84 NY2d at 88; see Bangladesh Bank v Rizal Commercial Banking Corp., 226 AD3d 60, 86 [1st Dept 2024]).
Under the foregoing standards, plaintiffs have alleged a claim for breach of the contract of sale (Markov v Katt, 176 AD3d 401, 401-02 [1st Dept 2019]; Second Source Funding, LLC v Yellowstone Capital, LLC, 144 AD3d 445, 445-46 [1st Dept 2016]). The Court rejects defendant's contention that the contract violates the rule against perpetuities.
Under New York's statutory rule against perpetuities, "[n]o estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved" (EPTL 9-1.1[b]). Where the duration or vesting of an estate is conditioned on a sale of assets, the statute's savings clause provides that "it shall be presumed that the creator of such estate intended such contingency to occur, if at all, within twenty-one years from the effective date of the instrument creating such estate" (EPTL 9-1.3[d]). "While the statute obligates reviewing courts, where possible, to avoid constructions that frustrate the parties' intended purposes, it does not authorize courts to rewrite instruments that unequivocally allow interests to vest outside the perpetuities period (Symphony Space, Inc. v Pergola Properties, Inc., 88 NY2d 466, 482 [1996][internal citation omitted]). Here, looking at the facts at the time of the contract's creation, as well as the plain implication of the terms thereof, the Court determines that the purchase option is not perpetual in duration (Protetch v Jocar Realty Co., Inc., 231 AD3d 654, 656 [1st Dept 2024]; EPTL 9-1.3[d]; cf. Barnes v Oceanus Navigation Corp., Ltd., 21 AD3d 975, 977 [2d Dept 2005]). 
Finally, accepting as true the facts alleged in the amended complaint, and according plaintiffs the benefit of every possible favorable inference, the remainder of defendant's arguments are without merit at the pleading stage (see Correa v Orient-Express Hotels, Inc., 84 AD3d 651 [1st Dept 2011]). Accordingly, it is
ORDERED that defendant's motion to dismiss the amended complaint is DENIED (seq. 002); and it is further
ORDERED that defendant's motion to dismiss the original complaint is WITHDRAWN (seq. 001); and it is further
ORDERED that defendant shall file and serve via NYSCEF an answer within 20 days of entry of this order; and it is further
ORDERED that the parties shall appear for a preliminary conference on July 23, 2025, at 10:00 AM.
This constitutes the decision and order of the Court.
DATE 5/2/2025
ASHLEE CRAWFORD, J.S.C.